## PRICE ET AL. v. HUDDLESTON.

[No. 20,856.   Filed December 20, 1906.]

1. APPEAL AND ERROR.—*Precipe.*—*Oral.*—*Presumptions.*—Where a transcript, without a written precipe therefor, is filed on appeal, the presumption is that appellants orally requested the same, an oral request being legally sufficient.   p. 537.

2. SAME. — *Transcript.*—*Precipe.*—*Failure   to   Include   Parts Called for.*—*Dismissal.*—That the transcript on appeal does not contain copies of all of the records and papers called for by the precipe, is not a ground for dismissal of the appeal. p. 538.

3. SAME. — *Transcript.* — *Omissions.* — *Precipe.*—*Certiorari.*— Where parts of the record below, specified in the precipe, are omitted from the transcript; or where parts are omitted which are necessary to appellee's cross-assignment of errors, or in showing that appellant's assignment is harmless, the same may be supplied by a writ of *certiorari.*   p. 538.

4. SAME.—*Transcript.*—*Omissions.*—Where the transcript contains enough of the record to present the questions raised on appeal, alleged omissions of other parts called for are harmless.   p. 539.

5. PLEADING.—*Answer.*—*Sales.*—*Delivery of Worthless Goods.*— An answer showing that the plaintiff delivered goods, contracted for to be of a certain quality, which were at the time of shipment and have been at all times since "of no value, and wholly worthless, and for that reason the defendant refuses to accept the same," is sufficient as against a complaint for the contract price of such goods.   *LaFayette Agricultural Works* v. *Phillips,* 47 Ind. 259, distinguished.   p. 540.

6. SALES.—*Goods of  Inferior  Quality.*—*Retention.*—*Tender.*— *Recovery of Value.*—Where defendant contracted for a certain quality of goods, and plaintiff delivered an inferior quality thereof, and defendant received same and failed to return or to tender same back to plaintiff, defendant is liable for the actual value thereof.   p. 541.

7. PLEADING.—*Answer.*—*Execution  of  Contract.*—*Fraud.*—An answer showing that defendant signed the contract sued upon, and that his signature was obtained by plaintiff's agent, without defendant's negligence and by means of a trick, the defendant thinking that he was executing a different contract, is sufficient as to a complaint for the enforcement of such contract.   p. 541.

8.  TRIAL.—*Instructions.—Incomplete.—Duty of Parties.*—Where an instruction is incomplete, but correct so far as it goes, the complaining party, to save any question thereon, must, at the proper time, present a complete instruction and request that it be given.  p. 542.

9.  CONTRACTS. — *Execution. — Fraud. — Relying upon Adverse Party's Representations of Contents of Writing.*—Defendant, who was able to read, cannot avoid his contract on the ground of fraud in plaintiff's misrepresenting to him the contents of · such contract, where he had ample opportunity but failed to read the same.  p. 542.

10. SALES.—*Goods.—Refusal to Accept Inferior Quality.*—Defendant has the legal right to refuse to accept goods inferior in quality, where his contract calls for a superior quality. p. 543.

11. APPEAL AND ERROR.—*Weighing Evidence.*—The Supreme ·Court will not weigh conflicting oral evidence.  p. 544.

From Wabash Circuit Court; *A. H. Plummer,* Judge.

Action by Milbert F. Price and others against James Huddleston.  From a judgment for defendant, plaintiffs appeal.  (For opinion overruling motion to dismiss appeal, see 36 Ind. App. 450.)  Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

·  *Walter S. Bent, Thomas L. Stitt* and *R. P. Howell,* for appellants.

*W. G. Todd,* for appellee.

HADLEY, J.—Action by appellants on a contract in writing, for the value of goods sold.  The questions presented arise on the sixth and seventh paragraphs of answer, and on the overruling of appellants' motion for a new trial.

We are first met by appellee with a motion to dismiss the appeal: (1) Because there is no properly authenticated precipe in the record; (2) because there is 1. absent from the record certain papers and pleadings called for by the precipe.  With respect to the precipe, there appears in the record, not immediately pre-

ceding the clerk's certificate, as required by the act of 1903 (Acts 1903, p. 338, §7, §641g Burns 1905), but at the head of the general bill of exceptions, what purports on its face to be a properly executed precipe, signed by the plaintiffs' attorney, and addressed to the clerk, calling for a complete transcript of the record for appeal. Appellee argues that the position occupied by the paper, and because there appears no file mark, and no entry or memorandum of the clerk, identifying the paper as a precipe filed in the case, we must disregard it, and treat the record as if no precipe had been filed; that is, as without proper authentication in this court. It is not necessary for us to consider the question here propounded; for assuming, without deciding, that there is no precipe in the record, its absence will not furnish a sufficient reason for dismissing the appeal, as under the statute, when a party desires a complete transcript for appeal, he may request the same of the clerk, either orally or in writing, as he may elect. *Workman v. State, ex rel.* (1905), 165 Ind. 42. And when a transcript appears here without a precipe we will presume the request was orally given to the clerk for a transcript that is full and complete. Elliott, App. Proc., §200.

Appellee's second reason for dismissal of the appeal is that the transcript does not contain copies of all the pleadings and rulings called for by the precipe. This fact, as a general rule, furnishes no ground for dismissal. It is incumbent upon an appellant to bring here such a transcript as will fully show and present the error relied upon. If he fails in any part of his transcript to make the error of the trial court clearly manifest, he will fail in his appeal. As a rule, there is no ground for appellee to complain that the transcript is not full and complete. But it sometimes happens that parts important to the appellant's appeal, and parts necessary to the use of appellee in making a cross-assignment of error, or in showing that the error against the ap-

pellant was harmless, and the like, are omitted from the transcript, by inadvertence or otherwise, in which case either party may have the record supplied or corrected by a writ of *certiorari,* but not dismissed. *Miller* v. *Shriner* (1882), 87 Ind. 141; Ewbank's Manual, §§22, 210; Elliott, App. Pro., §216. The motion to dismiss the appeal is overruled.

In the formation of issues there were divers paragraphs of pleadings withdrawn, and carried out on demurrer, and in some instances it is not altogether clear what state the record was in. In consequence of these things the transcript appears somewhat awkwardly framed, but the sixth and seventh paragraphs of answer to the only paragraph of complaint remaining in when they were filed are, with the complaint, clearly in the record, and, since they present all the questions raised on the pleadings, we need not concern ourselves about the remainder.

Better to comprehend the answers complained of, we subjoin the substance of the complaint. It is alleged that the defendant, James Huddleston, by his certain order in writing, dated February 10, 1904, a copy of which is attached as exhibit B, directed the plaintiffs to ship to him by freight certain jewelry, and a show-case, particularly described in exhibit B; that the plaintiffs accepted said order, and, pursuant to its terms, shipped the goods so ordered to the defendant by freight, on April 16, 1904, the purchase price of which remains unpaid. Exhibit B contains a list of articles and their prices, designated as "factory samples of rolled gold plate, gold front, and gold filled, sterling silver, and oxidized finished articles in assorted patterns," with terms of payment; also a stipulation that the plaintiffs would, at the end of thirteen months from date of shipment, on certain specified conditions, buy for cash, at original invoice prices, all goods remaining unsold. Also a guarantee of the goods for periods ranging

from five to twenty years, and a promise to replace any goods returned on account of defective workmanship or quality, and in consideration of which the merchant agrees not to claim a failure of consideration, or that the goods were not such as ordered, until he has exhausted the terms of the warranty and exchange. There were certain other conditions and stipulations, and the following order was appended:

"Puritan Manufacturing Company. Factory.

Please ship at your earliest convenience the goods listed in this order amounting to $150, upon the terms named herein, all of which I fully understand and approve. Gentlemen's line. Special attention to nice line emblem pins and buttons.

James Huddleston,
      Owner of Store.
N. B. Marriott,
      Salesman for Puritan Manufacturing Company."

To this complaint appellee's sixth paragraph of answer was that the goods shipped to him under the contract, as set out in the complaint, were, at the time of shipment, and have been at all times since, of no value, and wholly worthless, and for that reason the defendant refuses to accept the same. We think the sixth paragraph of answer is good. It is responsive to the complaint, and alleges, in effect, that the goods shipped to him, under the contract, were not of the quality he contracted for, but were when shipped, and at all times since have been, of no value and wholly worthless, and for which reason he refuses to accept the same. It will be observed that this averment as to quality is general. If the allegation had been that the goods were worthless, or of no value, to the defendant, it would have been insufficient. *LaFayette Agricultural Works* v. *Phillips* (1874), 47 Ind. 259.

But a general averment that a thing is wholly worthless is equivalent to a declaration that it is entirely destitute

of value, and the delivery or tender of valueless
6. goods under the contract in suit would amount to
such a breach of the contract as would furnish a
complete defense to an action for the purchase price. If
the goods had been received, and were of any value, in the
absence of a return or tender the plaintiff would be en-
titled to recover the amount of that value, even if the goods
were not of the value and quality represented. *Dill* v.
*O'Ferrell* (1873), 45 Ind. 268; *LaFayette Agricultural
Works* v. *Phillips, supra; Cates* v. *Bales* (1881), 78 Ind.
285; *Arnold* v. *Wilt* (1882), 86 Ind. 367; *Fleetwood* v.
*Dorsey Machine Co.* (1884), 95 Ind. 491; *Smith* v. *Bor-
den* (1903), 160 Ind. 223, 230.

The seventh paragraph of answer is in substance as fol-
lows: The defendant admits he signed the instrument sued
on, but was induced to sign it by the fraud of one
7. Marriott, an agent of the plaintiffs, who called
upon him in his place of business, and proposed to
sell him a quantity of jewelry, the same to be rolled gold
plate, gold front, gold filled, sterling silver, and oxidized
finish, manufactured by the plaintiffs. The defendant
agreed to purchase some jewelry, and to sign a written
order therefor, as proposed by Marriott, and thereupon the
latter produced a printed paper and form which purported
to be and was a simple order for the goods specified and
nothing more, and was as follows:

"Puritan Manufacturing Company. Factory.
February 10, 1904.
Please ship at your earliest convenience the goods
listed in this order, upon the terms herein named, all
of which I fully understand and approve. Gentle-
men, give special attention to nice line of emblem pins
and buttons. James Huddleston."

Said Marriott falsely and fraudulently represented to
the defendant that said paper contained nothing more than
a simple order for goods, and before the defendant signed

the same he carefully read said paper, and it contained an order for jewelry and nothing more, but by some unknown trick or artifice said Marriott substituted the contract in suit for said order for jewelry, and thereby fraudulently caused the defendant to sign said contract, without his knowledge, and without negligence on his part, he fully believing and intending at the time to sign only an order for said jewelry. This answer is ruled by the principle declared in *Cline* v. *Guthrie* (1873), 42 Ind. 227, 13 Am. Rep. 357, as follows: "The party whose signature to a paper is obtained by fraud as to the character of the paper itself, who is ignorant of such character, and has no intention of signing it, and who is guilty of no negligence in affixing his signature, or in not ascertaining the character of the instrument, is no more bound by it than if it were a total forgery, the signature included." This doctrine has been often reasserted in this court. See *Webb* v. *Corbin* (1881), 78 Ind. 400, and cases cited; *Home Nat. Bank* v. *Hill* (1905), 165 Ind. 226, and cases cited.

Complaint is made of certain instructions to the jury. There is no fault found with any of them, as far as they go, but the complaint is that none of them fully covers the subject to which it relates. This court has held many times that where an instruction is good as far as it goes, it will not be adjudged erroneous because it does not cover the subject as fully as it might have done. In such cases if the complaining party had desired a more specific and elaborate instruction on the particular subject, he should have prepared one, and, at the proper time, requested the court to give it to the jury.

The seventh paragraph of answer was not sustained by the evidence. The defendant failed to show any diligence whatever. The soliciting agent of the plaintiff was a total stranger to him. He knew nothing of the plaintiffs as manufacturers of jewelry, he had never been engaged in the sale of jewelry, and testified he

could read, but relied upon the representations of the agent as to what the written and printed instrument contained, and did not read a word in it. Besides, there is a total absence of evidence that the plaintiffs' agent employed any fraud, trick, or device, or substituted one paper for another, to induce the defendant to sign the contract in suit.

With respect to the sixth paragraph of answer it should be remembered that, in effect, it sets up that the defendant refused to accept the goods consigned to him by the plaintiffs, because they were not of the class or quality stipulated in the contract; that the goods so consigned were of no value and wholly worthless. This, we have held, was a sufficient answer. The question here is not one where inferior goods, though of some value, have been received and retained by the purchaser, without an offer to return them, but one where the purchaser refused to accept goods because not of the kind and quality contracted for. A party has the right to insist upon receiving what he buys. If A sells to B a horse, it is not a sufficient performance to tender him an ox. If, therefore, the defendant contracted for rolled gold plate, gold front, gold filled, sterling silver, and oxidized finished goods, and agreed to expose them for sale in his store, and try for thirteen months to sell them, and return to the plaintiffs for exchange all such goods as did not prove of good quality and workmanship, he could demand goods that came substantially within the class he bargained for. The law will not presume that he would have agreed to pay the same price for, or that he would have purchased and have undertaken to do the same by, a different class of goods. So if the goods consigned to the defendant were not substantially the same goods described in the contract, the defendant had a right to refuse to take them; and he will incur no liability under the contract until the plaintiffs have delivered or tendered such goods as they engaged to deliver.

The evidence is in sharp conflict upon facts set forth in the sixth answer. The plaintiffs gave testimony that the goods consigned were the identical goods described in the contract, while on the other hand two experienced jewelers of the city testified to the contrary, one of them testifying that very little of the consignment was rolled gold, none gold front, none gold filled, and nine-tenths of it "stuff" that no responsible jeweler could afford to handle. Anyway, there was evidence both in support of and against the sixth paragraph of answer, and, having no power to weigh the evidence, we must leave the verdict of the jury undisturbed.

Judgment affirmed.