## STATE EX REL. T. S. BJOREM AND OTHERS v. DISTRICT COURT OF NORMAN COUNTY AND ANOTHER.[1]

October 29, 1915.

Nos. 19,414—(26).

**Ditch — amended petition.**

1. The trial court acted within its jurisdiction in substituting an amended petition in drainage proceedings for the original petition.

**Order establishing ditch — route.**

2. The route of the ditch as finally recommended by the engineer and established by the court was not the route called for by the amended petition, but the court was justified in finding that the same lands would be benefited. It is *held*, following State v. Watts, 116 Minn. 326, that this departure from the route called for by the petition did not render the order void.

**Act valid — proposed ditch in single county.**

3. Laws 1909, c. 469, construed, and *held* to confer jurisdiction upon the court in drainage proceedings, though the proposed ditch is wholly within one county and will not result in benefit or damages to lands in an adjoining county. *Held*, further, that as so construed, the law is

[1] Reported in 154 N. W. 617.

Note.—As to the procedure for the establishment of drains and sewers, see note in 60 L.R.A. 161.

not unconstitutional as conferring upon the courts legislative and administrative powers. State v. Crosby, 92 Minn. 176, followed.

**Decision sustained by evidence.**

4. The decision of the trial court that the route and plan adopted was practicable and effective is sustained by the evidence.

**Order establishing ditch not uncertain.**

5. The order establishing the ditch is not void for uncertainty.

Upon the relation of T. S. Bjorem, J. P. Grothe, G. Gilbertson, Alex Holden and George W. Wishard, freeholders, this court granted five writs of *certiorari* directed to the district court for Norman county and Andrew Grindeland, one of the judges thereof, to review the order of that court in establishing Judicial Ditch No. 51. Affirmed.

*C. G. Dosland, Ole J. Vaule* and *William P. Murphy,* for relators.

*M. A. Brattland, W. F. Andrews, Charles Loring* and *G. A. Young-quist,* for respondents.

BUNN, J.

*Certiorari* to review an order of the district court of Norman county establishing Judicial Ditch No. 51.

The main facts are as follows: The Wild Rice river has its source in Rice lake, in Clearwater county, and flows westwardly through the counties of Clearwater, Mahnomen and Norman, into the Red River of the North. Wild Rice river is more than 100 miles in length, has a basin of about 1,500 square miles, and is the main watercourse of the counties named. Along its headwaters the altitude is about 1,500 feet above sea level, and there are numerous lakes and swamps in this district, which in times of flood find their outlet in the river, as do great quantities of surface water. At the point in Norman county where the drainage project begins, the river is but 870 feet above sea level, a fall of 630 feet. West of this point the river falls but 50 feet in its course to the Red river. In consequence of these natural conditions water coming down the steep incline overflows the banks of the river and floods the country in the vicinity of Ada, mainly to the north, the river westerly of this point not having the capacity to carry off the water. The waters which thus spread over the country to the north do not again find their way into the Wild Rice, but finally flow into the Marsh river. The Marsh has its

source in the vicinity of Ada, and flows in a northwesterly direction until it joins the Red River of the North at a point some distance north from where the Wild Rice river empties. The course of the latter river is a winding and devious one, while the Marsh flows comparatively straight. It is said that the Marsh river was formerly the main outlet of the Wild Rice river, though at the present time they are unconnected. The capacity of the Marsh river is much greater than that of the Wild Rice and for most of the course its banks are better defined and higher.

In December, 1910, 23 freeholders of Norman county petitioned for a judicial ditch to improve the Wild Rice river. The ditch, or river improvement, called for by the petition was designated as Judicial Ditch No. 51, of the counties of Clearwater, Mahnomen and Norman, and was to commence near the source of the river and follow its course through the three counties to its junction with the Red river. The improvement planned was really a straightening and deepening of the Wild Rice river throughout its entire length so as to give it capacity to carry off the water which, in times of high water, escaped over its banks and spread over the surrounding farming country to the north. The court appointed an engineer to make a survey of the proposed ditch, but no report was ever made and no further action taken on the petition. In February, 1911, an amended petition was filed; this was signed by 26 freeholders of Norman county, of which signers 13 were on the original petition. The amended petition called for a ditch starting in Norman county and running southwesterly for half a mile and thence straight west connecting with the Wild Rice river in the town of Hendrum. This is called the "prairie route." As an alternative the petition called for a ditch commencing at the same starting point, and following the course of the Wild Rice river to its union with the Red river; or, if the engineer finds that better results could be obtained or greater benefits accrue by selecting a different source, course or outlet, that he so report, and that the court establish the ditch as designated by the engineer. Upon application of petitioners and after due notice the court filed an order substituting the amended petition for the original one. There was a hearing upon the amended petition and an engineer was appointed to survey the ditch. In October, 1911, the engineer filed a report recommending an improvement of the Wild Rice river by deepening its channel and

straightening its course, from the starting point named in the amended petition for practically the distance of the so-called "prairie route" described in the amended petition. He further recommended a "relief channel" connecting the Wild Rice river with the Marsh river, and an improvement of the latter river. The estimated cost of all this work was found by the viewers appointed to be considerably in excess of the benefits, and the project was for this reason found to be impracticable. The viewers found, however, that the ditch was a public necessity and recommended that the report of the engineer be referred back to him for an estimate of the cost of, and plans and specifications for, a "reduced or modified route which will come within the available assessments of benefits." The court so referred the matter to the engineer, who in September, 1914, filed his amended report recommending an improvement the main features of which were a relief channel connecting the Wild Rice with the Marsh river, a deepening of the channel of the Wild Rice for some two miles on each side of the "take-out" where the water was to be diverted into the relief channel, and an improvement of the Marsh river to increase its capacity to carry off the water thus diverted. At the junction of the relief channel and the Wild Rice river, the report recommended a reinforced concrete bulkhead to regulate the flow of water into the relief channel and thence into the Marsh river. The estimated cost of this bulkhead was $1,500, and the estimated cost of the entire project was $104,611.79, less than the amount of benefits that a second set of viewers found. This amended report of the engineers, with the report of the viewers, was approved by the court and an order made establishing the ditch as thus recommended by the engineer. It is this order that the relators seek to reverse by the writs of *certiorari*.

1. The first contention of relators is that the trial court had no jurisdiction to entertain the amended petition while the original petition was still pending and undetermined; that, when the improvement called for by the original petition was found impracticable, the proceedings should have been dismissed and the costs paid by the bondsmen. It is true that the source as well as the course of the proposed ditch described in the amended petition was quite different from that described in the original petition, but it is equally true that the object sought to be attained was the same, the lands sought to be benefited the same lands.

The amended petition was substituted for the original after a hearing had upon notice duly served upon all interested parties, and a new bond for costs was given. It does not appear that the county had incurred any expense under the original petition. Leaving out of consideration for the present the fact that the first and alternative routes described in the amended petition—the "prairie" route, and the route which followed the course of the Wild Rice river—lay wholly within Norman county, we are unable to see why the court could not substitute the amended petition for the original. While the drainage law says nothing about amendments to the petition, it is perfectly plain that the court had jurisdiction to entertain a new petition, and we hold that the court acted within its jurisdiction in entertaining the amended petition, although the original may still have been technically pending.

2. The second point is that the ditch as established is not the ditch called for by the amended petition, and does not answer the purpose thereof. It is contended that this departure makes the order void. It is correct that neither the main nor alternative route described in the amended petition is the same as that finally recommended by the engineer and established by the order of the court. But, as stated, the amended petition asked that, if the engineer found that better results could be obtained by selecting a different source or course or outlet than those in the two routes described, he so report and that the court establish the ditch as designated by the engineer. While the drainage law does not give the engineer "a roving commission to plan drainage improvements," it plainly does not confine him to the precise route described in the petition. G. S. 1913, § 5526. The case of State v. Watts, 116 Minn. 326, 133 N. W. 971, contains a full discussion of the subject. The engineer is permitted to make changes in the ditch as proposed when necessary to obtain the best results, and the inquiry is not so much as to the extent of the variation from the starting point or route of the ditch, as it is whether the same or different lands are benefited by the improvement. It should be noted that the law as it was when the Watts case was decided required the consent of the bondsmen before the engineer could depart radically from the ditch proposed, while under the present law such consent is unnecessary. While it must be conceded that the improvement finally recommended by the engineer and ordered by the

court in this case is radically different, in the route adopted and to some extent in the character of the improvement, from the ditch described in the amended petition, we are unable to say that the statute was violated. It expressly permits a variation from the line described in the petition, or from the starting point thereof, as the engineer deems best, and "as he finds necessary for the complete drainage of the lands likely to be assessed for the ditch originally petitioned for." The whole idea of the original project was a prevent the flooding of the assessed district caused by the inability of the Wild Rice river to carry off the water that came from the higher land. It was comparatively immaterial how this was accomplished, so long as the result was obtained. From the evidence returned, and it does not purport to be all the evidence received, we must hold that the trial court was justified in finding that the improvement ordered would accomplish the same result as the one petitioned for. Certainly the expense to the property owners is very much less under the plan adopted than under any of the other plans proposed. It is apparent that much conflict of opinion existed as to the best route and the character of the improvement desired, and the trial court reached the result it did after giving full consideration to the divergent views of those interested.

The relators testify, it is true, that their lands, some of which the proposed ditch crosses, or passes near, and some of which are in the flat country between the two rivers, will not be drained by the improvement ordered, but on the contrary will be flooded because of the incapacity of the Marsh river to take care of the water thus diverted from the Wild Rice, in addition to its natural flow and the water from several ditches that already empty into it. But the evidence of the engineers is to the contrary, and is ample to sustain the decision of the trial court that the ditch established will furnish all the relief that would have come from either the proposed ditch across the prairie or that following the course of the Wild Rice. Under the statute, the case of State v. Watts, and the facts here as we understand them, our conclusion is that there was no such departure from the scheme outlined by the amended petition as to render the order void.

3. The next point made by counsel for relators is based upon the fact that the ditch called for by the amended petition, as well as the

one recommended by the engineer and established by the court, is wholly within one county. The claim is that the district court, or a judge thereof, has no jurisdiction over proceedings for a ditch that is wholly within one county. The further contention is made that if the statute be construed to give the court jurisdiction of such a proceeding, it is unconstitutional.

Prior to the adoption of Laws 1909, p. 565, c. 469, it is clear that where a proposed ditch was wholly within a single county and would probably not result in benefit or damages to lands in an adjoining county, the board of county commissioners had exclusive jurisdiction. It was only where the proposed ditch extended into more than. one county, or where it would probably benefit or damage lands in an adjoining county, that any jurisdiction was given to the district judge or court. But Laws 1909, p. 565, c. 469, seems to have given the district court concurrent jurisdiction with the board of county commissioners in proceedings for ditches wholly within a single county. A comparison of the prior law with the subsequent is instructive.

Laws 1905, p. 303, c. 230, § 1, give the board of county commissioners of any county power to cause to be constructed any ditch, etc., within said county. Then follow the sections as to county ditches. Section 27 [p. 328] of the act concerns judicial ditches, and is as follows:

"Whenever it is desired to construct a ditch extending into or through part or the whole of more than one county, or if entirely within one county, the ditch is to be so located that it will probably result in benefit or damage, or both, to lands in an adjoining county or counties, then in either of such cases, the petition required by section three of this act shall be addressed and presented to the judge of the district court of the district in which any one of such counties is situated."

By chapter 469, p. 565, Laws 1909, the 1905 law was amended. Section 1 was amended to read as follows:

"The county board of the several counties of this state within their respective counties, and the judges of the district courts of this state, shall have the power, when the conditions stated in the third section of this act are found to exist, to cause to be constructed as hereinafter provided any ditch," etc.

Section 27 was amended [p. 578] so as to read as follows:

131 M.—4.

"Before any district judge shall establish any ditch, drain, water course or other construction named in section 1 of this chapter, there shall be presented to a judge of the district court in the judicial district in which any part of the proposed ditch is to be located, a petition such as is required by section 3, of chapter 230, of the General Laws of Minnesota for the year 1905, as amended by this act."

The third section of the act referred to both in section 1, and in section 27, provided for the petition, bond, notice of hearing, survey, etc.

It is plain from this comparison of the statute as it was before 1909, with the act of 1909, which has been in force ever since, that the legislature intended to give the district court, or the district judge, jurisdiction over drainage proceedings, although the proposed improvement was wholly within one county.

The sections quoted indicate this intention clearly, and this conclusion is strengthened by the provision requiring the petition to be filed with the clerk of the district court of the *county wherein said ditch* or any part thereof is to be located, and the provision requiring that the bond shall be made payable to the *county or counties, as the case may be.* [G. S. 1913, § 5553.] The statute as amended must be construed as giving the court jurisdiction of ditch proceedings, although the proposed ditch is wholly within a single county.

It is urged that this construction makes the statute unconstitutional as conferring upon the courts legislative and administrative powers. This question is disposed of adversely to relators by the case of State v. Crosby, 92 Minn. 176, 99 N. W. 636. While in that case the law held valid only attempted to confer jurisdiction upon the courts where the ditch extended into two or more counties, the opinion is not based upon this feature and could not logically be. It can hardly be argued that the exercise of judicial functions is involved where the ditch extends into more than one county, and that there is nothing judicial in the proceedings when the ditch lies wholly within one county. As said by the present Chief Justice in the Crosby case:

"The question of the propriety or necessity of public ditches to drain marshy or overflowed lands is one of legislative character. The condemnation of land through which such ditches may be constructed, the assessment of damages, and the determination of the legal rights of

parties affected are judicial. The exercise of all these powers is involved in proceedings under this statute." We hold the statute constitutional.

4. Relators claim that the improvement of the Wild Rice river was practicable, and that the diversion of its waters into the Marsh river is unnecessary, unreasonable and unauthorized. This argument does not go to the jurisdiction of the court, but rather to the comparative practicability and effectiveness of the two plans. We have already discussed this question to some extent, and we need only add that this question was for the trial court to determine and we find nothing in the evidence returned that justifies us in saying that the decision in favor of the Marsh river route ought to be disturbed.

5. The claim that the engineer's report, made a part of the order establishing the ditch, does not locate the starting point, terminus, the "take-out," or any of the cut-offs, is not borne out by a reference to that report and the maps and plats which are made parts of it. The contention that the order establishing the ditch is void for uncertainty is therefore not sustained.

Order affirmed.