## IN RE JUDICIAL DITCH NO. 81, IN MARTIN COUNTY, MINNESOTA.

## STATE EX REL. VILLAGE OF SHERBURN v. DISTRICT COURT OF THE SEVENTEENTH JUDICIAL DISTRICT.[1]

April 4, 1919.

No. 21,008.

**Drain — may be within limits of municipal corporation.**

The general drainage law authorizes the construction of ditches and drains whenever the prescribed conditions are found to exist, whether the lands to be drained lie within or without the corporate limits of a city or village.

Upon the relation of the village of Sherburn the supreme court granted its writ of certiorari directed to the district court of the Seventeenth judicial district to review proceedings in that court, Dean, J., establishing Judicial Ditch No. 81 in Martin county. Affirmed.

*Knox & Faber,* for relator.

*J. E. Haycraft,* for respondent.

TAYLOR, C.

Certiorari on the relation of the village of Sherburn to review the proceedings and order establishing a tile ditch or drain, known as Judicial Ditch No. 81, in the county of Martin. The relator does not question the regularity of the proceedings, but contends that the purpose of the ditch is to drain lands lying within the corporate limits of the village, and that the general drainage law under which these proceedings were taken does not authorize the construction of ditches or drains within the corporate limits of cities or villages.

The ditch is not wholly within the village, for the main ditch and also one of its branches begin several hundred feet outside the corporate limits, but much the greater part of the ditch and of the lands to be drained by it are within the village.

[1] Reported in 171 N. W. 130.

The general drainage law is found in the General Statutes of 1913, § 5523, et seq. and the amendment thereto, made by the Laws of 1915 and 1917. The basis of the present law is chapter 230 of the Laws of 1905, p. 303, which repealed prior ditch laws, and enacted a code of procedure for establishing and constructing county ditches and judicial ditches. Under the law of 1905, if the proposed ditch was wholly within a single county, jurisdiction of the proceedings was vested in the board of county commissioners of that county and the ditch was termed a county ditch; if the proposed ditch extended into or affected lands within more than one county, jurisdiction of the proceedings was vested in the district court and the ditch was termed a judicial ditch. The only territorial requirements or restrictions stated in this act were that ditches established by the county commissioners should affect only their own county, and that ditches established by the district court should affect more than one county. This latter requirement was eliminated by chapter 469, p. 565, Laws of 1909, which authorized the district court to establish ditches wholly within one county. State v. District Court of Norman County, 131 Minn. 43, 154 N. W. 617. The ditch law has been amended to a greater or less extent at every session of the legislature held since the enactment of the original law in 1905, but neither the original law nor any amendment has contained any provision excluding cities or villages from the territory within which ditches might be constructed thereunder.

Section 1 of the law of 1905, which in substance, but in varying language, has been continued to the present time, gives power to construct any ditch or drain whenever the prescribed conditions are found to exist, and to extend the same into or through any city or village for the purpose of securing a suitable outlet. Laws 1905, p. 303, c. 230, § 1; G. S. 1913, § 5523; Laws 1917, p. 692, c. 441, § 3. The relator argues that authorizing the extension of the ditch into or through a city or village to secure a proper outlet, shows that the legislature did not intend to authorize the construction of a ditch within such municipalities, except to the extent necessary to secure a proper outlet. We think the force of this argument is overcome by other provisions of the law. Section 3 of the act of 1905, the substance of which has been continued to the present time, provides that no ditch shall be constructed under the act

until the prescribed petition therefor has been filed, and further provides that such petition may be signed by a certain number of landowners,

"Or by the supervisors of any township, or the duly authorized officers of any city or village council, which township, village or city is liable to be affected by or assessed for the proposed construction, or by the duly authorized agent of any public institution, corporation or railroad whose lands or property will be liable to be affected by or assessed for the expense of the construction of the same, or by the state board of control." Laws 1905, p. 305, c. 230, § 3; G. S. 1913, § 5525; Laws 1917, p. 694, c. 441, § 4.

The somewhat vague provisions for assessing benefits to municipal corporations found in the act of 1905 were made more specific in the amendment of 1909, and were extended and made still more specific in the amendment of 1917 from section 13 of which we quote the following:

"Any township, village, city, county or other municipality, receiving any benefits from the construction of drainage improvement under the provisions of this act shall be assessable therefor for any improvements to any public roads, street or other property owned or controlled by such municipality, and in the case of villages or cities they shall also be assessable for any benefits derived from the construction of such drainage improvement by way of furnishing an outlet for drainage of surface waters from within or in the vicinity of such city or village and for the removal of unhealthful conditions in the vicinity of such village or city by the drainage of stagnant waters from within or in the vicinity of such city or village, or for the furnishing of any other drainage or sewer outlet that may result in any benefit to or improvement of the healthful conditions of said city or village, and it shall be the duty of the viewers appointed under the provisions of this law to assess such benefits to such municipalities.  Whenever any public road or street shall have been found to be so benefited, the city, village, town or county which is by law chargeable with the duty of keeping such road or street in repair shall be assessed the amount of such benefits accruing to such road or street within the limits of such town, village, city or county, and all benefits that shall result to any such village or city in consequence of being furnished an outlet for drainage of any kind or improvement of

the healthful conditions of said city or village as hereinbefore specified, shall be also assessed against such village or city."

Other provisions of the amendment provide the procedure for enforcing payment of the assessments.

Section 5532 of the General Statutes of 1913, still in force, requires the county board or the district court, as the case may be, to establish the ditch whenever it shall find that the prescribed proceedings have been duly had and taken and "that the estimated benefits to be derived from the construction of the said work are greater than the total costs, including damages awarded, and that such damages and benefits have been duly awarded and assessed, and that said work will be of public utility or benefit, or will promote the public health." There is nothing restricting the improvement to lands not within a city or village, and the mandatory form of this section makes clear that neither the county board nor the court can refuse to establish a ditch on the ground that the purpose is to drain lands within a city or village.

By conferring a general power to construct ditches without inserting any provision excluding cities or villages from the territory within which they may be constructed; by authorizing the construction of ditches on the sole petition of a city or village; by making elaborate provision for assessing against and collecting from cities and villages all manner of benefits derived by them from such improvements, and by commanding the tribunal having jurisdiction of the proceedings to establish the ditch whenever the specifically enumerated conditions are found to exist, without specifying any condition restricting the ditch to territory outside cities and villages, the legislature clearly evinced its intention to provide for the construction of ditches within such municipalities for the purpose of draining lands therein.

The relator contends that the general drainage law should not be construed as authorizing the construction of drains and ditches within cities or villages, for the reason that these municipalities are given power by their charters or by other laws to construct drains and sewers, and that the construction of drains or ditches within these municipalities under the general law is unnecessary and will result in conflict of authority and in interference with the municipal drainage system. We think the legislature has made the general law as well as the charter provisions

operative within such municipalities, and its power to do so is beyond question. As said by the Kansas court in a somewhat similar case:

"That the district includes a part of the city of Topeka affords no legal objection. The area of the State is divided into counties, townships, and cities. Any system of drainage must include some of these subdivisions, or parts of them. The efficiency of drainage would be greatly impaired if the powers of the governing board were limited to the lines of existing governmental subdivisions. The city is the creation of the legislative will as well as the drainage district; both are public corporations and the legislature may rightfully prescribe the powers of each, subject only to constitutional restrictions." Roby v. Drainage District, 77 Kan. 754, 759, 95 Pac. 399, 401.

See also People v. Nibbe, 150 Ill. 269, 37 N. E. 217.

However, we anticipate no serious conflict or difficulty in the practical operation of the law. Only ditches which provide drainage necessary to accomplish some public purpose can be established under it, and even such a ditch cannot be constructed, unless the estimated benefits to be derived from it exceed the total cost of construction including damages awarded. The law does not authorize the construction of a ditch to displace an adequate and proper sewer or drainage system already established and in operation, but merely affords a means for draining lands in need thereof, whether within or without the corporate limits of a city or village. As to lands within such corporate limits, the situation is quite similar to that where one drainage district overlaps another, concerning which the Nebraska court observes:

"The statute does not refer in specific terms to the overlapping of districts, nor does it forbid their formation. While some complications may arise in the prosecution of public improvements on land within two or more districts and in assessments to pay therefor, yet we are of opinion that the objection made is not a serious one. Relator's land can only be assessed for, and to the extent of, benefits actually bestowed by virtue of the improvements made by any particular district." State v. Fuller, 83 Neb. 784, 120 N. W. 495.

We are of opinion that the law authorized the construction of the proposed ditches or drains and the order of the district court is affirmed.