NORTHERN INDIANA LAND COMPANY ET AL. *v.* CARLIN ET AL.

[No. 23,558.    Filed April 29, 1920.]

1. DRAINS.—*New Report.*—*Remonstrance.*—*Presumption on Appeal.* —*Waiver.*—Where two reports were filed in a drainage proceeding and the appellants remonstrated to each report, the fact that only the remonstrance to the second amended report is in the

record on appeal does not give rise to a presumption in favor of the action of the trial court in overruling it, the rule that parties to the first report who fail to remonstrate thereto may not remonstrate to a second report, except as to new matter, not being applicable so as to constitute a waiver of the remonstrators' objections. p. 328.

2. APPEAL.—*Harmless Error.*—*Appellee's Duty.*—Where the appellant presents a record showing the error relied on, or one that fully presents the questions he desires to have considered, it is the appellee's duty to bring omitted proceedings into record by *certiorari,* if they claim such proceeding would render the errors assigned harmless. p. 329.

3. DRAINS.—*Reports.*—*Description of Lands Affected.*—*Sufficiency.* —Descriptions in the commissioners' report of lands affected in a drainage proceeding as "part of" a certain described forty-acre tract, in the absence of a showing that they were not described in the report and the petition as belonging to the persons therein named, as shown by the tax duplicates or record of transfers, or that such descriptions could not be made certain, were sufficient to give the court jurisdiction as against objection thereto on the ground of vagueness and indefiniteness. p. 329.

4. DRAINS.—*Findings.*—*Failure to Challenge.*—An objection by remonstrance that land in another drainage district would be injured by the discharge of water through the proposed drain, presented a material question of fact, and the court's finding thereon against the remonstrator, not challenged for want of evidence, is conclusive on appeal. p. 330.

5. DRAINS.—*Report.*—*Sufficiency.*—Where the width and depth of a proposed drain are shown in the engineer's profile, the commissioners' report that refers to the profile is not objectionable because such facts are not stated in the body of the report. p. 331.

6. DRAINS.—*Sufficiency.*—*Description.*—*Profile.*—The sufficiency of a proposed drain, as to width and depth, may be put in issue by provision in the commissioners' report making the engineer's profile a part thereof, under §4, Acts 1907 p. 508, §6143 Burns 1914. p. 331.

7. DRAINS.—*Commissioners' Discretion.*—*Statute.*—*Construction.*— Though, under §§6141-6143 Burns 1914, Acts 1907 p. 508, drainage commissioners are given some discretionary power in the matters which they are called upon to determine, they are not given a roving commission to plan drainage improvements, nor authority to radically depart from the general purview of the

petition, which points out the object to be attained and the method to be pursued.    p. 338.

8.  DRAINS.—*"Arms" and "Branches."—Statute.—Construction.*—As used in §6142 Burns 1914, Acts 1907 p. 508, authorizing drainage commissioners to locate drains with arms and branches, the words "arms" and "branches" are to be given their well-defined meaning as referring to ditches branching out from the main ditch or trunk line, so as to authorize the construction of only a system of drainage.    p. 338.

9.  DRAINS.—*Double System.—Validity of Report.*—In a proceeding for a drain, under a petition seeking the construction of a main ditch with branches, the commissioners have no authority to report, nor the court to establish, a system in which one lateral discharged into a different drain, and was connected with the main drain only by an extension thereof, which would carry no water except at times of extreme flood.    p. 338.

From Lake Circuit Court; *J. P. Wason,* Special Judge.

Proceeding by Patrick J. Carlin and others for the establishment of a drain, in which the Northern Indiana Land Company and others filed remonstrances. From a judgment overruling the remonstrances, the remonstrators appeal.    *Reversed.*

*S. C. Hubbell, Abraham Halleck, J. A. Gavitt, Frank E. Gavin* and *Joseph E. Brown,* for appellants.

*J. Will Belshaw, Victor K. Roberts, Otto J. Bruce* and *George E. Hershman,* for appellees.

MYERS, J.—Patrick J. Carlin and six other persons, five of whom are appellees herein, on January 24, 1916, filed in the clerk's office of the Lake Circuit Court their petition for the establishment of a drain and laterals thereto in Lake county, Indiana, pursuant to the Drainage Act of 1907, Acts 1907 p. 508, §6140 *et seq.* Burns 1914.    This proposed drain was known as Singleton ditch No. 3.

At the time of filing this petition there was pending in the same court the petition of Charles A. Buckley and fourteen other persons for the establishment of a drain to be known as Griesel ditch No. 3, and one lateral thereto.

On March 6, 1917, on order of court, the Griesel ditch petition and the Singleton ditch petition were consolidated, the former to stand as a supplemental petition to the latter. Drainage commissioners were appointed and such proceedings were thereafter had, including reports by the commissioners, which were judicially declared not according to law, that on February 18, 1918, the commissioners filed their last amended report, to which report remonstrances were filed. The issues formed by the petitions, commissioners' report, and remonstrances were submitted to the court, trial was had, special finding of facts made, and conclusion of law stated thereon. The judgment of the court was "that the ditch petitioned for and as reported by the commissioners be established as reported and the assessments as reported by the commissioners and as modified by the court are in all things confirmed."

The drainage commissioners reported that they designated as the main ditch, known as Singleton ditch No. 3, one extension referred to as section A, and thirty laterals or branch drains, affecting in the aggregate several thousand acres of land, and involving the descriptions of numerous parcels of land less than forty-acre tracts. This report together with the report of the engineer cover 115 typewritten pages of the record. The remonstrators challenged the report as not being according to law, and by proper

assignments of error in this court they attack the judgment of the lower court on the ground that it was without jurisdiction to establish the proposed ditch and laterals thereto, and because of erroneous conclusions of law.

The contentions of appellants, hereafter in this opinion noticed, challenge the foundation upon which the judgment in this case rests. For it must 1. be conceded that the petition, and the law thereby invoked concerning drainage liberally construed to effectuate the purpose intended, furnishes the rule by which these proceedings must be measured, and the questions presented must be answered. We are only concerned with the issues tendered by the remonstrances filed to the final amended report of the drainage commissioners. However, at this point we find that appellees, in effect, are insisting that the judgment herein should be affirmed on the theory that all reasonable presumptions must be indulged in favor of the proceedings and action of the trial court, and in support of this insistence they point to the record, which shows that each of the appellants filed a remonstrance to each report and neither of these remonstrances, except the last, is here as a part of the record. They cite *Wiley* v. *Peckinpaugh* (1912), 178 Ind. 618, 99 N. E. 807. In that case it is held that parties to the proceeding, at the time the first report of the drainage commissioners is filed, who fail to remonstrate will not be permitted to file a remonstrance to a new or subsequent report, except as to new matter in the latter report, and that parties brought in by the new report may remonstrate for any cause regardless of the matter con-

tained in the first report. The facts in the Wiley case distinguish it from the case at bar.

It is the duty of an appellant on appeal to this court to present a record showing the error relied upon, or one that will fully present the questions he desires to have considered. *Price* v. *Huddleston* (1906), 167 Ind. 536, 79 N. E. 496. That has been done with sufficient certainty in this case. If a more complete record might have rendered harmless the claimed erroneous action of the trial court, as is suggested by appellees, and they desired to make such point, they should have exercised their right to a writ of *certiorari* and brought such omitted proceedings into the record. "Council was under a duty to examine the transcript, and the fault is theirs if they do not take steps necessary to rectify errors and secure amendments." Elliott, App. Proc. §217; *Gregory* v. *Slaughter* (1862), 19 Ind. 342; *Price* v. *Huddleston, supra.*

As we read the record in this case, we conclude that the only real controversy here presented hinges on the legal effect of the facts relative to proposed extension A and proposed Nethery lateral. However, appellants have urged a few contentions more or less general, and of these we shall first take notice.

It is insisted that certain parcels of land less than forty-acre tracts carry benefit assessments amounting to several thousand dollars, and that such lands are described in the report and in the findings of the court as "part of" a certain described forty-acre tract, which descriptions are so vague, imperfect and indefinite as to furnish no means of identifying or locating such parcels, and by reason

thereof the trial court did not have jurisdiction over such lands to establish ditches through or across the same as contemplated, or to make a valid assessment against them.

For aught here pointed out, these several tracts of land are described in the petition and in the drainage commissioners' report as belonging to the persons therein named, as shown by the last tax duplicate or record of transfers kept by the auditor, and that such parcels of land are there so described. Nor does it appear that the descriptions are such that they cannot be made certain should the necessity arise for so doing. If so, the descriptions are sufficient to give the court jurisdiction to make the assessments. *Ager* v. *State, ex rel.* (1904), 162 Ind. 538, 70 N. E. 808; *Wabash R. Co.* v. *Jackson* (1911), 176 Ind. 487, 491, 95 N. E. 311, 96 N. E. 466; *Seybold* v. *Rehwald* (1912), 177 Ind. 301, 309, 95 N. E. 235; *State, ex rel.* v. *Duncan* (1911), 175 Ind. 661, 95 N. E. 127.

Appellants make the point that the trial court was without power or authority to order the Nethery lateral constructed over lands in section 10, township 32, range 7, for the reason that no lands in section 10 are described or referred to in the petition or report of the drainage commissioners, and for that reason the court was without jurisdiction over these lands and the owners thereof. We have examined the petition, the report of the drainage commissioners, and the court's finding of facts without discovering a single reference to section 10. No benefits are assessed or damages awarded to the lands in that section, nor does it appear that the proposed main ditch or any of its laterals will be

constructed through or even touch any part of the land in that section. It does appear from the remonstrance of the Northern Indiana Land Company that it is the owner of this section, except lots 2 and 3, and one of the grounds of its remonstrance is that its land in this section now drained by another system of drainage in process of construction will be damaged by the overflow waters from 25,000 acres of land diverted from their natural course through the proposed so-called Nethery lateral into the ditch now being constructed. Thus a material question of fact was presented and by the court found against this remonstrator. This finding is not challenged for want of evidence to sustain it, and, as we are at present advised, the point made cannot be sustained.

Appellants also assert that the report is not according to law, for the reason that there is no showing in the body of the report as to the depth of cut at each station, or the number of cubic yards to be excavated therefrom, or the grade of the ditch. The report refers to the engineer's report, which, with the profile, shows these facts, and this report by reference is made a part of the report of the commissioners and is sufficient. Such facts go to the sufficiency of the drain to provide the purpose intended, and they may be put in issue and tried under the tenth subdivision of §6143, *supra.* *State, ex rel.* v. *Duncan, supra; Williams* v. *Dexter* (1911), 175 Ind. 659, 95 N. E. 113; *State, ex rel.* v. *District Court* (1915), 131 Minn. 43, 51, 154 N. W. 617.

The remonstrators further contend that the special finding of facts shows that the report of the commis-

sioners was not according to law, in that they reported a double system of drainage on a petition calling for a single system, and that the conclusion of law to the effect that the petitioners were "entitled to have the ditch established as reported" is erroneous.

These questions, as we shall hereafter see, center on the legal effect to be given the facts pertaining to the main ditch petitioned for and specifically described in the petition, known as Singleton ditch No. 3, and reported extension A and Nethery lateral. While the facts specially found cover 108 typewritten pages of the record, yet it will only be necessary for us to refer in a general way to such of them, along with the following map, as will tend to furnish general information concerning the territory involved, and that part of the improvement which appellants claim render the report of the commissioners "not according to law."

Northern Ind. Land Co. *v.* Carlin—189 Ind. 324.

The petition located the main ditch over the course of Singleton ditch No. 2, beginning on the range line between ranges 7 and 8, and on the east line of section 36 in township 33, and thence in a southwesterly direction crossing the west line of section 25, township 32, range 10 into Illinois. But this ditch as reported by the commissioners and established by the court commences as above stated; thence in a southwesterly direction following the course of Singleton ditch No. 2 to a point near the center of the northwest quarter of the southeast quarter of section 30, township 32, range 9; thence south following the West creek ditch to the south line of the right of way of the New York Central Railroad to about 100 feet west of the northwest corner of the northeast quarter of section 31, township 32, range 9; thence in a southwesterly course and emptying into the Kankakee river at about 500 feet east of the Indiana-Illinois state line in section 1, township 31, range 10.

Section A of the main ditch, as reported and established, begins at the head of the main ditch with a bottom width of six feet, and runs thence in a northeasterly direction at an average depth of five to six feet, terminating with a two-foot bottom at the Nethery lateral near the south quarter corner of section 20, township 33, range 7.

The Nethery lateral, as reported and established, commences at a point 450 feet east of the center of section 17, township 33, range 7, at the outlet of Stony Run ditch with a bottom width of twelve feet; thence south and west, gradually widening and deepening, to a point near the center of section 20, and the source of section A, with a bottom width of fourteen feet,

depth of 11.2 feet, and an average fall of four feet to the mile; thence southeasterly through the northeast quarter of section 29 and the southwest quarter of section 28 and the northeast quarter of section 33, township 33, range 7, to the county line between Lake and Porter counties, with a bottom width at that point of twenty-five feet; thence south on the county line to section 9, township 32, range 7; thence 20° west with an average fall of eighteen inches to the mile to the Marble ditch where its bottom width is thirty feet.

The facts found further show that the Marble ditch has its source at the northeast corner of Jasper county and follows generally the course of the Kankakee river, widening, deepening, and straightening it for a distance of twenty-eight miles and terminating at a point in section 1, township 31, range 9. This ditch is now in process of construction with a bottom width of ninety feet, average depth of ten feet, average fall of one foot per mile, and is completed from its source to a point near the southeast corner of Lake county and is from two-thirds to three-fourths completed from that point down stream for a distance of about eight miles. By the construction of the Marble ditch, and for which no lands in the Stony Run district were assessed, the water level will be substantially lowered and the lands opposite and below the proposed outlet of the Nethery lateral, south of the river, will be rendered suitable for use as farm lands.

It must be conceded that the facts conclusively show that 125,000 acres of marsh land will be affected by the Singleton ditch improvement, and 25,000 acres of rolling land with narrow valleys and sloping clay hills, known as Stony Run district, will be furnished

an outlet for drainage by the Nethery lateral. The two ditches are connected, as we have seen, by extension A, the bottom of which is five feet above the bottom of Nethery lateral. A slight observation of the two drains at this point, and other facts relative thereto, conclusively show that the drainage commissioners never intended by the proposed construction or improvement that any water from the Stony Run district, as collected and turned into the Nethery lateral, should ever find its way into the proposed Singleton ditch, except on occasions of exceptionally and seldom-occurring high water, when only a mere trifle would reach it as compared to the immense volume of water this lateral would be capable of handling.

It appears that the water from the Stony Run district at no time ever found its way into the Kankakee river within eight or ten miles below the proposed outlet of the Nethery lateral, and in recent years it was conveyed by the old Singleton ditch into the State of Illinois and there turned into the Kankakee river. A system of dykes, established as provided by law, has been constructed and is maintained on the north side of the river, extending from the highlands near the Porter county line and following generally the course of the river into the State of Illinois. These dykes force the overflow water from the river, which, prior to such construction, in part, found its way into the old Singleton ditch, over the lands on the south of the river, which slope generally to the west and southwest, except at times when the dykes at places gave way.

With this general situation before us, we are asked to determine as a matter of law whether or not the

proposed improvement considered as a whole is a single or double system of drainage, and, if double, does the law authorize the construction of two systems of drainage upon a petition clearly calling for a single system.

It is conceded that this proceeding originated by the filing of a petition as sanctioned by §6141, *supra,* to be acted upon and determined under the provisions of §§6142, 6143, *supra.* The question here presented largely depends upon the authority given the board of drainage commissioners under §6142, *supra,* and to that part of this section which provides that "they shall proceed and definitely determine the best and cheapest method of drainage, the termini and route, location and character of the proposed work, and fix the same by metes and bounds, courses and distance and description, including   *   *   *   all necessary arms, estimate the cost thereof, divide the drain or ditch into sections not more than 100 feet in length,   *   *   *   assess the benefits or damages as the case may be to each separate tract of land to be affected thereby, and to easements,   *   *   *   and to make report to the court, under oath   *   *   .*. The drainage commissioners, in locating the line or lines of work of drainage, may vary from the line described in the petition as they deem best and may fix the beginning or outlet so as to secure the best results; they may run the line so as to avoid all injury possible to lands, easements or public grounds and so as to benefit public highways.   *   *   *   That in no case shall they change or construct the work as to sacrifice the best interests of such work or drainage,   *   *   *   and in locating and fixing the size and

dimensions of drains and ditches, they shall provide ample means for the drainage or protection from overflow of the land to be affected, having in view future contingencies as well as the present.''

It is apparent from the reading of this statute that the drainage commissioners are given some discretionary powers over the matters which they are called upon to determine. However, they are not given a roving commission to plan drainage improvements, or authority to radically depart from the general purview of the petition, which in a general way points out the object to be attained and the method to be pursued in accomplishing the purpose of the petitioners. The entire wording of the statute unquestionably signifies a trunk ditch, the beginning and outlet of which the commissioners may fix, together with all arms and branches thereof necessary to secure the best results. The words ''arms'' and ''branches,'' as used in the statute, have well-defined meaning, and from aught appearing they were used and are to be given their commonly understood interpretation. Obviously,˗ then, the words ''arms'' or ''branches,'' found in the statute, refer to ditches branching out from the main ditch or trunk line, and together forming a system of drainage in harmony with the general intent of the petition therefor.

As we view the facts pertaining to the Nethery lateral, it should be regarded as a part of the Stony Run system of drainage. It is the outlet for that system. That seems to be its only purpose. The facts will not warrant us in saying that it is an arm or branch of the Singleton ditch, but it

might properly be considered an arm or branch of the Marble ditch. No one will contend that the commissioners had any authority to report, nor that the court had any power to establish, in the instant proceedings, an arm or branch to the Marble ditch. Hence we conclude that the report of the commissioners was not according to law, and that the so-called Nethery lateral, as reported and established by the court, was without warrant of law.

Upon a consideration of the whole record before us, we are of the opinion that justice will best be subserved by granting a new trial. Judgment reversed, with instructions to the trial court to sustain appellants' motions for a new trial, and for further proceedings not inconsistent with this opinion.