# WABASH RAILROAD COMPANY *v.* JACKSON ET AL.

[No. 21,727. Filed June 9, 1911. Rehearing denied November 22, 1911.]

1. RAILROADS.—*Watercourses.*—*Drains.*—*Culverts.*—*Costs.*—Where a natural watercourse flows across the right of way of a railroad company, the track being built on a fill, and a public drain is constructed to carry off the waters of such watercourse, the company must construct at its own expense, though such expense seems to be disproportionate to the public benefit received, a culvert sufficient to carry such waters over its right of way. pp. 490, 491.

2. DRAINS.—*Public Utility.*—The public utility of a proposed public drain does not depend entirely upon the area drained thereby, the amount of travel over, or the length of highways affected, or the cost of restoring or opening a waterway for the passage of water. p. 490.

3. DRAINS.—*Assessments.*—*Descriptions of Lands.*—*Sufficiency.*—*Foreclosure.*—Descriptions of lands in a drainage assessment, that can be made certain, are sufficient; and in a suit to foreclose the lien thereof correct descriptions may be supplied. p. 491.

4. DRAINS.—*Assessment Liens.*—*Foreclosure.*—*Correcting Descriptions.*—Under §6144 Burns 1908, Acts 1907 p. 508, §5, providing that if an assessment of benefits for a public drain is not paid "the auditor shall place the same on the delinquent tax duplicate, and the same shall be collected as other delinquent state and county taxes are collected," drainage assessments can be collected only by such method; but in a proceeding by the purchaser, at a tax sale, to enforce the lien of such assessment, a defective description may be corrected and such lien may be enforced against the proper land by its true description. p. 491.

5. DRAINS.—*Railroad Culverts.*—*Power of Court to Prescribe Dimensions of.*—*Appeal.*—Where an issue was made in a drainage case as to the dimensions of a railroad culvert to be constructed by the railroad company as a part of such drain, and no motion was made to modify the judgment, and no offer was made to construct a sufficient culvert, the Supreme Court will consider that the size of the culvert ordered is absolutely required for carrying off the waters in the drainage area; and the question whether the company has a discretion as to the kind of a sufficient culvert to be constructed is not presented. p. 492.

From Wabash Circuit Court; *A. H. Plummer,* Judge.

Drainage petition by William A. Jackson and others against which the Wabash Railroad Company remonstrates.

From a judgment for petitioners, remonstrant appeals. *Affirmed.*

*E. P. Hammond, Dan W. Simms, William V. Stuart, Allison E. Stuart* and *J. D. Conner, Jr.,* for appellant.

*Joseph W. Murphy* and *Walter G. Todd,* for appellees.

MYERS, J.—Appellees filed a petition in the Wabash Circuit Court, under the act of 1907 (Acts 1907 p. 508, §6140 *et seq.* Burns 1908), asking that certain lands in that county be drained by a public drain. Over the remonstrance of appellant, said drain was established so that it crossed appellant's right of way. By their report the commissioners of drainage found for the construction of the drain, and the costs and expenses were fixed at $788.52. Benefits and damages were assessed, in which appellant was reported as benefited $60, and the assessment against it fixed at $50, but in their report, the commissioners recommended that appellant, at its own cost and expense construct a bridge twelve feet high and twenty-four feet wide. Various lands, lots and a public highway would be affected by the construction of the proposed drain, and all were reported as benefited in amounts in excess of the assessments for construction.

Upon remonstrance by appellant, a special finding of facts was made and conclusions of law stated. The findings are quite lengthy, but they show that the railway was constructed in 1854 with a fill; that where the proposed drain crosses the right of way the fill was twenty-two feet high, fourteen feet wide on top, and eighty feet wide at its base, at which point, in 1881, appellant constructed a stone culvert four feet and one inch wide at the bottom, and the same width to the height of three feet, and for the next two feet, eleven and a half inches wider, the total height being five feet, one inch. This culvert is called No. 440. At a point about eight hundred feet southwest is culvert No. 441, constructed when the railroad was built. A natural stream approaches the railroad from the northwest, called Jackson

creek. When the railway was constructed that stream crossed in a state of nature about three hundred feet southwest of culvert No. 441, and the stream was diverted through that culvert, which was of stone, eight feet wide at the bottom and four feet high. This culvert was replaced in 1902 by a cast-iron pipe five feet in diameter. The natural stream has its source in hills some two and a half miles northwest of the railway crossing. Soon after the construction of culvert No. 440, which was at a point where there was no waterway prior thereto, one Jackson, father of some of the appellees, constructed a ditch southeast of Jackson creek to and through culvert No. 440. It is found that culvert No. 440, on the line of the proposed drain, will not in times of high water be sufficient to conduct the water which will flow in the proposed drain, which is partly in the channel of the old creek, but diverges from it at its greatest distance four hundred feet, and will be of the average width of four feet in the bottom, twelve feet at the top, and of the average depth of four feet, and runs over a portion of the ditch constructed by James Jackson, connecting with culvert No. 440. After the construction of said ditch, Jackson ploughed and filled up Jackson creek proper from a point 238 feet north of culvert No. 441, and caused the water of Jackson Creek to flow through culvert No. 440.

It is found that since the construction of the railway grade the culverts have not been sufficient to carry off the waters of Jackson creek, and in times of heavy rains the water backs up at the railway embankment, and runs southeasterly over a public highway, and into the houses of residents of the town of Rich Valley, and covers the highway and remains in the houses five or six hours at a time.

All necessary facts authorizing the establishment of the drain are found, but the court found that a culvert seventeen feet long and eight feet high will be sufficient to carry off the water.

As conclusions of law the court established the ditch and

required the construction of the culvert by appellant at its own expense, which it is found will be $8,000, as against $10,000, the cost of a culvert recommended by the commissioners of drainage.

It is urged by appellant that the cost of the culvert, added to the cost of construction, would largely exceed the benefits assessed, and that the proceeding should have been 1. dismissed. The case, therefore, turns upon the question whether the cost of the culvert is to be included in the cost of constructing the drain, or whether the cost of the culvert should be wholly borne by appellant. That question has been determined adversely to appellant. *Chicago, etc., R. Co.* v. *Luddington* (1910), 175 Ind. 35.

It is urged, however, that this case is to be distinguished from the one just cited, because in that case "it may be inferred from the proceedings that a large amount of land was assessed benefits, largely in excess of the damages sustained by the company, it appearing that the damages sustained by the company in that case were only about $3,200." In this case the total benefits assessed are $927.97, and the cost, exclusive of the bridge, $788.52. If, as was held in the case cited, railroad companies as a matter of law, are required to construct at their own expense such culverts as are required, so as not to interfere with the free use of public drains, whether constructed prior to or after the construction of the railway, and in such manner as not unnecessarily to impair its usefulness, the cost of such culvert is not the subject of damages, within the contemplation of the statute, which is specifically referred to in that case, and to which we adhere. It cannot reasonably be contended that the construction of a drain, and whether or not it is 2. of public utility and beneficial to highways, can be made to depend alone upon the number of acres of land immediately drained, or the amount of travel over or the length of highways benefited, or the cost of restoring or opening a waterway for the passage of water.

It is shown by the findings that the stream rises in the hills two and a half miles away, and empties the water in a large volume upon these lower lands, and that it is impeded by the railway embankment, and the insufficiency of the waterways through it, and seriously affects the residents of a village, the lands north of and adjoining the railway, and the highway.

It is also contended that certain assessments are so defective as to description of the property assessed that they cannot be enforced. Some descriptions are not very accurate, but they can be made certain, and that is sufficient. Upon an application to foreclose the lien, the correct description could be supplied.

It is to be noted that under §6144, *supra*, a sale of land for ditch assessments can be made by county treasurers only in the manner that other taxes are collected, and it has been held, under a similar statute, that collection can be made only in that method. *Storms* v. *Stevens* (1885), 104 Ind. 46; *Lockwood* v. *Ferguson* (1886), 105 Ind. 380.

But it is also held, under the same statute, that under a proceeding to foreclose, after sale, the lien may be enforced against the land intended to be assessed, by its true description. *Ager* v. *State, ex rel.* (1904), 162 Ind. 538; *Luzadder* v. *State, ex rel.* (1892), 131 Ind. 598; *Cullen* v. *Strauz* (1890), 124 Ind. 340; *Brosemer* v. *Kelsey* (1886), 106 Ind. 504; *Baker* v. *Clem* (1885), 102 Ind. 109.

The apparent hardship of a case where appellant is put to an expense of $8,000 to produce a benefit of $927.97 cannot be invoked as against a public enterprise. If this were so, it will readily be seen that many much-needed improvements for the public benefit, and in the interest of public health, would be prohibited, unless assessments should be made which would amount to confiscation of the property of those who, except for the creation of conditions such as are here presented, would not need the

improvement. Appellant received and exercises its franchise subject to both the common law and the statutory power to require it to perform the duty imposed upon it by this proceeding.

No error is made to appear, and the judgment is affirmed.

## ON PETITION FOR REHEARING.

MYERS, J.—Appellant seeks a rehearing in this case, or, in the alternative, a modification of the judgment, so that it may construct such bridge or culvert as it sees fit, provided it be sufficient, on the ground that it will be presumed that it will construct a sufficient bridge, the theory being that neither the commissioners of drainage, nor the court, has any power or authority to define the kind and dimensions of the bridge to be placed over the ditch.

There was no offer, as is now made, to construct a sufficient bridge or culvert, but appellant stood upon the proposition that it was not required to construct any bridge or culvert. There was no motion to strike out the recommendation of the commissioners as to the bridge to be built by appellant, but appellant formed an issue, and tried the question of the required capacity of the bridge, and the finding was against it upon the question now urged, that there was no necessity for so large a structure. There was no motion to modify the judgment, though in the face of the finding as to the necessary size of the bridge the judgment should not be modified. Appellant insisted and sought to show that a bridge of much less dimensions and cost would be sufficient, and the court did reduce the size and the estimated cost of the bridge, and found that a bridge of certain dimensions would be sufficient, which was necessarily a finding that a lesser construction would be insufficient.

We find no reason to modify our former holding as the record comes to us. The petition for a rehearing is overruled.