## LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY ET AL. *v.* CLOUGH ET AL.

### ERROR TO THE SUPREME COURT OF THE STATE OF INDIANA.

No. 87. Argued November 9, 10, 1916.—Decided January 8, 1917.

By the terms of the Indiana Railway Law of May 11, 1852, and amendments (1 Ind. Rev. Stats. 1852, p. 409, § 13; 2 Burns' Ann. Ind. Stats. 1914, §§ 5176 *et seq.*, § 5195), as construed by the Supreme Court of the State, the obligation assumed by companies deriving their franchises thereunder to construct their railways over streams, water-courses and canals "so as not to interfere with the free use of the same," etc., is a continuing obligation, under which such

companies must bear without compensation the burden of repairing and adjusting their roads and bridges when canals are made across their rights of way, or natural streams intersecting them are deepened, in the execution of public drainage projects, pursuant to the Drainage Act of March 11, 1907 (Laws 1907, p. 508; 3 Burns' Ann. Ind. Stats. 1914, § 6140).

Due process is not denied by refusing compensation for the temporary inconvenience, or the cost of railway reconstruction, resulting from the making of a drainage improvement across the rights of way of railway companies, when the improvement is made for the public benefit in the proper exercise of the state police power, and neither wantonly nor arbitrarily, when no land of the companies is taken, but their easements merely crossed, and when the duty of accommodating their railroads to such improvements is part of the obligation assumed in accepting their franchises from the State.

The state drainage law, § 3, as construed by the state court, allows compensation for damages to the roads and bridges of public corporations, viz., counties, which have not agreed to bear such damages themselves, but no compensation for like damages to private railway corporations which have made such agreements in advance, through their charter undertakings. *Held*, a substantial distinction, satisfying the equal protection clause of the Fourteenth Amendment.

182 Indiana, 178, affirmed.

THE case is stated in the opinion.

*Mr. John B. Peterson* and *Mr. J. A. Gavit*, with whom *Mr. Addison C. Harris* and *Mr. Robert J. Cary* were on the briefs, for plaintiffs in error.

*Mr. John H. Gillett* and *Mr. Frank B. Pattee*, with whom *Mr. Randall W. Burns* was on the briefs, for defendants in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

The Little Calumet River rises in LaPorte County, Indiana, flows westerly across that and the adjoining counties of Porter and Lake into the State of Illinois, and, after continuing its course for some distance in that State,

empties into the Big Grand Calumet, which in turn
empties into Lake Michigan.   In Indiana the river runs
approximately parallel to the south shore of the lake.   In-
tervening is a ridge of sandy land about one mile in width,
30 feet higher than the water level of the lake, and 10 feet
higher than the river.   The Lake Shore & Michigan
Southern and the Chicago, Indiana & Southern companies
own parallel railroad lines running along this ridge.   Nei-
ther of these roads crosses the river in Indiana.   The
Michigan Central Railroad crosses the river in that State
upon a steel bridge resting on abutments and piers.   The
Calumet Valley, in Porter and Lake counties, is a mile or
more in width, lying between the ridge on the north and
low hills on the south.   The watershed drained by the
river in Indiana is about 350 square miles.   At times the
river fails to carry within its banks all the water, and the
overflows produce a marsh having an area of 14,000 acres.
Under "An Act concerning drainage," approved March 11,
1907 (Laws 1907, p. 508; 3 Burns' Ann. Ind. Stats 1914,
§ 6140), application was made by defendants in error,
owners of lands affected by the overflows, to the Porter
Circuit Court, for the establishment of a proposed plan
of drainage, its essential features being the cutting of an
artificial channel for a considerable distance along the
course of the Little Calumet and at such a gradient as to
reverse the direction of its flow, and the construction of
an outlet for its waters in the form of an open ditch to run
northwardly, cutting through the sandy ridge and empty-
ing into the lake.   Pursuant to the provisions of the act,
the petition was referred to the drainage commissioners.
They made a report in favor of the proposed plan, and
assessed substantial damages, in excess of benefits, in favor
of the Chicago, Indiana & Southern and the Lake Shore
& Michigan Southern companies with respect to their
rights of way.   No benefits or damages were appraised to
the Michigan Central.   Under § 4 of the act certain land-

owners assessed with benefits filed remonstrances against
the awards of damages to the former two companies.
Each of the three companies filed remonstrances: the
Lake Shore & Michigan Southern and the Chicago, In-
diana & Southern upon the ground that the damages
awarded to them were inadequate because the new ditch,
where it was to cross their rights of way, would be 70 feet
wide at the bottom, about 30 feet deep, and about 200
feet wide at the top, and the expense of bridging it, with
the tracks, would in each instance be upwards of $100,000;
the Michigan Central, because no damages were assessed
in its favor although by the deepening of the channel of
the river at its crossing it would be required to take out
the present piers and abutments and erect new ones to
support the bridge at a cost of about $60,000.  Upon the
commissioners' report and the remonstrances the matter
came on for hearing before the Circuit Court, where find-
ings were made setting forth the necessity for the drainage,
stating the plan in detail, finding that it would be prac-
ticable to accomplish the proposed drainage without an
expense exceeding the aggregate benefits; that the pro-
posed work would benefit the public health, would im-
prove the public highways in several townships specified,
and would be of public utility.  It was further found
that the Chicago, Indiana & Southern and Lake Shore &
Michigan Southern companies, whose roads were to be
crossed by the main ditch, had no property other than
their right of way that would be affected or interfered
with or touched by the drainage proceeding, and these
companies would not be damaged by the construction
of the proposed drain; and that at the point where the
ditch was to pass under the bridge of the Michigan Central
the natural channel of the stream would have to be deep-
ened, and this would necessitate the rebuilding of the
abutments and piers upon which the bridge rested, but
that this company would neither be damaged nor benefited

by the proposed drain. A motion for a new trial having been overruled, a judgment was rendered confirming the report of the commissioners as modified by the court and ordering that the proposed work of drainage be established. The three companies appealed to the Supreme Court of Indiana, where the judgment was affirmed (182 Indiana, 178), and they bring the case here upon questions raised under the Fourteenth Amendment to the Federal Constitution.

The principal contention of the Lake Shore & Michigan Southern and the Chicago, Indiana & Southern companies is that since their railroads are not within the area to be drained, and neither contribute to the formation of the marsh nor are to be in anywise benefited by its drainage, their lands can be taken only through the exercise of the power of eminent domain, with appropriate compensation, and that a denial of such compensation is a taking of their property without due process of law. A right to compensation is asserted in behalf of the Michigan Central on the ground that its present bridge and abutments form no obstruction to the natural flow of the Little Calumet River.

It will be observed that none of the lands of any plaintiff in error is expropriated. The damage they suffer is confined to a temporary inconvenience in the use of their rights of way pending the construction of the drain and the necessity for making substantial expenditures of money in order to pass their railroads over the new watercourse. But the record shows that each of the companies was organized and had its existence under the general laws of the State for the incorporation of railroad companies, that is to say, an act approved May 11, 1852, and amendments thereto. 1 Ind. Rev. Stats. 1852, p. 409; 2 Burns' Ann. Ind. Stats. 1914, §§ 5176 *et seq.* By § 13 of this act (as found in Burns, § 5195) it is declared: "Every such corporation shall possess the general powers, and be subject

to the liabilities and restrictions expressed in the special powers following: . . . Fifth: To construct its road upon or across any stream of water, water-course, highway, railroad or canal, so as not to interfere with the free use of the same, which the route of its road shall intersect, in such manner as to afford security for life and property; but the corporation shall restore the stream or water-course, road or highway, thus intersected, to its former state, or in a sufficient manner not to unnecessarily impair its usefulness or injure its franchises."

Concerning the duty thus imposed upon railroad companies with respect to highway crossings, it has been held by the Supreme Court of Indiana in a long line of cases that the duty is applicable not only to the original construction of a railroad across highways then in existence, but also where highways are laid out and opened across a railroad after its construction; that it is a continuing duty, requiring the railroad to keep pace with the times, with the increase of public travel, the change of methods and improvements of highways, and the public desire for the increased ease and convenience of the traveling public. *Louisville, New Albany & Chicago Ry. Co.* v. *Smith,* 91 Indiana, 119, 121; *Evansville &c. R. R. Co.* v. *Crist,* 116 Indiana, 446, 454; *Chicago &c. Ry. Co.* v. *State,* 158 Indiana, 189, 191; *Chicago &c. Ry. Co.* v. *State,* 159 Indiana, 237, 240; *Baltimore &c. R. R. Co.* v. *State,* 159 Indiana, 510, 519; *Lake Erie &c. R. R. Co.* v. *Shelley,* 163 Indiana, 36, 41; *Southern Indiana Ry. Co.* v. *McCarrell,* 163 Indiana, 469, 473; *Vandalia R. R. Co.* v. *State,* 166 Indiana, 219, 223; *Cincinnati &c. Ry. Co.* v. *Connersville,* 170 Indiana, 316, 323, affirmed by this court 218 U. S. 336; *New York &c. R. R. Co.* v. *Rhodes,* 171 Indiana, 521, 525; *Pittsburgh &c. Ry. Co.* v. *Gregg,* 181 Indiana, 42, 53.

But in the Railroad Act streams, watercourses, and canals are mentioned along with roads and highways. The terms employed are broad enough to include artificial

watercourses, whether employed for traffic, for irrigation, or for drainage. And accordingly it has been held by the Supreme Court of the State that with respect to a public ditch constructed under the drainage act of 1907 railroad companies are under the same duty as with respect to highways, and that the company acquires its right of way subject to the right of the State to extend such ditches across it, without compensation to the company for the interruption and inconvenience, if any, or for increased expense or risk, or for the cost of accommodating the railroad line to the crossing. *Chicago & Erie R. R. Co.* v. *Luddington,* 175 Indiana, 35, 38–40; *Wabash R. R. Co.* v. *Jackson,* 176 Indiana, 487, 490.

No question is made but that the settled law of the State is as we have stated it, and that the charter obligations of plaintiffs in error are such as we have defined. An attempt is made to distinguish the *Luddington Case* upon the ground that the railroad there in question was within the drainage district, and the *Jackson Case* upon the ground that the railroad had built an embankment across a valley without providing sufficient culverts to carry off the water of the creek in time of heavy rains. It is contended that since in the present case the Lake Shore & Michigan Southern and the Chicago, Indiana & Southern roads lie upon the top of the ridge between the Little Calumet River and Lake Michigan, and do not in anywise cause or contribute to the marsh, and are not benefited by the proposed drainage, they cannot lawfully be included within the drainage district. And as to the Michigan Central, it is argued that, since its bridge as heretofore constructed does not obstruct the natural flow of the stream, it cannot be subjected to any part of the cost of the drainage system. These distinctions, and a reference made in the same connection to *Myles Salt Co.* v. *Iberia Drainage District,* 239 U. S. 478, are aside from the real point of the case. The State is not proposing to

assess plaintiffs in error for benefits with respect to the
drainage project, nor to tax them for its support. It is
requiring them merely to bear the cost of constructing
crossings for their railroad lines over the proposed new
channel and outlet, "so as not to interfere with the free
use of the same," and "in a sufficient manner not to un-
necessarily impair its usefulness." With respect to this
duty, if the State has a right to impose it in aid of the
drainage project, the remoteness or proximity of the area
to be drained is wholly immaterial.

In view of the obligations assumed by the respective
companies when they accepted their franchises at the
hands of the State, it is very clear that the State may
exercise its police power in laying out an artificial water-
course across the rights of way without making compensa-
tion to the companies for the inconvenience and expense
to which they are thereby subjected, unless, indeed, it
be made to appear that the power is being exerted arbi-
trarily, or wantonly, or for private as distinguished from
public benefit, or otherwise in disregard of the funda-
mental rights of the companies concerned, in either of
which cases there would be an abuse rather than an
exercise of the power, and the project could not lawfully
be carried out against their opposition, with or without
compensation.

In *Chicago, Burlington & Quincy R. R. Co.* v. *Chicago*,
166 U. S. 226, 252, where the city was condemning certain
parts of the right of way of the railroad for the opening
and widening of a street across it, and only nominal com-
pensation was awarded, it was contended among other
things that the company was deprived of its property
without due process of law, because in ascertaining the
compensation the cost of constructing gates and a tower
for operating them, planking the crossing, filling between
the rails, putting in an extra rail, and the annual expense
of depreciations, maintenance, etc., were disregarded.

But the court held that since the company took its charter
and laid its tracks subject to the condition that their use
might be regulated by the State so as to insure the public
safety, the exercise of that authority by the State was
not subject to a condition that the company should be
indemnified for the damage resulting from its exercise.
In *Chicago, Burlington & Quincy Ry. Co.* v. *Drainage Com-
missioners,* 200 U. S. 561, 582, 595, a plan of drainage
required the enlarging and deepening of a natural water-
course over which the railway crossed by a bridge, and
the plan could not be carried out without the removal of
certain timbers and stones placed in the creek by the
company when it constructed the foundation for the
bridge, and these could not be removed without destroy-
ing the foundation and rendering it necessary to construct
another bridge with an opening wide enough to carry the
increased flow of the creek under the drainage system
adopted. The court held it to be the duty of the railway
company at its own expense to remove from the creek
the bridge, culvert, timbers and stones placed there by it,
and at its own expense to erect and maintain a new bridge
to conform to the regulations established by the drainage
commissioners under the authority of the State, and that
the enforcement of such a requirement would not amount
to a taking of private property for public use within the
meaning of the Constitution. In *Cincinnati, Indianapolis
& Western Ry. Co.* v. *Connersville,* 218 U. S. 336, 344, it
was held that since the railway company accepted its
franchise from the State subject to the condition that it
would conform at its own expense to any regulations, not
arbitrary in their character, as to the opening or use of
streets which had for their object the safety of the public
or the promotion of the public convenience, the company
had no right to be reimbursed for the moneys necessarily
expended in constructing a bridge over a public street
laid out through its embankment. In *Chicago, Milwaukee*

& St. Paul Ry. Co. v. Minneapolis, 232 U. S. 430, the same doctrine was applied, and held to sustain the refusal of compensation for the cost of constructing and maintaining a railroad bridge across a gap in the right of way made by the construction under the authority of the State of a canal to unite two lakes that formed a part of a public park.

It requires no argument to show that the establishment of a system of public drainage in the interest of the health and general welfare of the people is likewise an object that legitimately invokes the exercise of the police power of the State. New Orleans Gas Light Co. v. Drainage Commission, 197 U. S. 453, 460; Chicago, Burlington & Quincy Ry. Co. v. Drainage Commissioners, 200 U. S. 561, 592; Atlantic Coast Line R. R. Co. v. Goldsboro, 232 U. S. 548, 561.

In the present case it is not and could not reasonably be contended that the State is exercising its power arbitrarily, or wantonly, or for a private benefit. It cannot be doubted that the general object of the drainage act of 1907 is to subserve the public interest. Its 2d section requires that petitioners for the establishment of a drainage project shall declare their opinion "that the public health will be improved, or that one or more public highways of the county, or street or streets of, or within the corporate limits of a city or town, will be benefited by the proposed drainage, or that the proposed work will be of public utility." By the 3d section the commissioners are required to consider whether this is true, and if not the petition is to be dismissed; and by § 4 it is made a sufficient ground of remonstrance, resulting if sustained in the dismissal of the proceedings, "that the proposed work will neither improve the public health nor benefit any public highway of the county, nor be of public utility." As to the particular project under consideration, it is specifically found, as we have seen, that a public benefit

will result.  In the *Luddington Case*, 175 Indiana, 38, it was expressly declared that ditches established under this law are public ditches of the State whose construction and repair are matters of public or state concern.  There exists, therefore, no basis for holding that by the judgment under review the property of any of the plaintiffs in error is taken without due process of law within the meaning of the Fourteenth Amendment.

The "equal protection" clause of the same Amendment is invoked upon the ground that whereas by § 3 of the drainage act (Laws 1907, p. 513; 3 Burns 1914, § 6142, p. 135) the commissioners are required to "assess the benefits or damages as the case may be to each separate tract of land to be affected thereby, and to easements held by railway or other corporations, as well as to cities, towns, or other public or private corporations, including any land, rights, easements or water power, injuriously or beneficially affected," there is discrimination in the judgment, in that an award is made in favor of Lake County for damage to bridges and highways, while compensation to plaintiffs in error for damages to their respective roads, and to the Michigan Central for damages to its bridge, is denied.  But as has been held many times, the "equal protection" clause does not deprive the States of power to resort to classification for purposes of legislation; and unless it appears that a state law as construed and applied by the state court of last resort bases discriminations upon arbitrary distinctions, we cannot judicially declare that the State has refused to give equal protection of the laws. *Singer Sewing Machine Co.* v. *Brickell*, 233 U. S. 304, 315; *Missouri, Kansas & Texas Ry. Co.*, v. *Cade*, 233 U. S. 642, 650.  In the present case the Supreme Court of Indiana in effect held that § 3 of the drainage act did not entitle a railway company to damages in respect of its right of way which was not affected by the proposed drainage in any manner otherwise than by acceptance of its charter

it had agreed to submit to. There is a very evident and substantial basis for a distinction that denies compensation to a private corporation in such a case while at the same time allowing compensation to a public corporation that has made no such agreement.

*Judgment affirmed.*