## WABASH RY. CO. v. SOUTH DAVIESS COUNTY DRAINAGE DIST.*

(Circuit Court of Appeals, Eighth Circuit. May 3, 1926.)

No. 7193.

1. Drains ⟐13—Drainage district, created under Missouri statutes, is political subdivision of state, exercising prescribed statutory functions within territorial limits of district, and is quasi public corporation.

Drainage district, created under statutes of Missouri, is a political subdivision of the state, created under police power, and exercising prescribed statutory functions of government within territorial limitation of district, and is a quasi public corporation.

2. Drains ⟐82(3)—Refusal to declare law to be that feasibility of proposed drainage scheme or reclamation plan could be attacked after commissioners' report was filed was harmless, where court admitted evidence thereon and ruled on question of feasibility (Act Feb. 26, 1919 [Comp. St. Ann. Supp. 1919, § 1246]).

Refusal of court to declare law to be that feasibility of proposed drainage scheme or plan for reclamation could be attacked after report of commissioners was filed held harmless, in view of Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), where contention was as to feasibility relative to exceptor's property, and court heard witnesses on such question and ruled thereon.

3. Drains ⟐82(3)—Contention that damages will accrue to railroad company from proposed drainage scheme is reviewable in Circuit Court of Appeals (Rev. St. Mo. 1919, § 4392).

Under Rev. St. Mo. 1919, § 4392, contention that damages will accrue to railroad company in doing proposed drainage work in manner contemplated, for which no compensation has been allowed, is reviewable in Circuit Court of Appeals.

4. Drains ⟐79—Taxation for drainage district need not be uniform as regards acreage.

Uniformity of taxation for drainage district benefits is not required as regards acreage, since chief regard must be had to value of property assessed, increase of value arising from proposed improvements and decrease of damages theretofore resulting from floods.

5. Drains ⟐79—Law assessing railroads for drainage district purposes according to "increased physical efficiency" and "decreased maintenance cost" held to provide proper method (Rev. St. Mo. 1919, § 4390).

Rev. St. Mo. 1919, § 4390, providing for assessment for drainage district purposes of railroads and other property, according to increased physical efficiency and decreased maintenance cost, held to provide proper method of assessment, as "increased physical efficiency" means increased use, decrease of time, and increase of value by reason thereof, while "decreased maintenance cost" means decrease of upkeep.

*Rehearing denied August 10, 1926.

**6. Drains ⟨⟩79.**

Generally charges arising from drainage improvement must be apportioned in just and reasonable manner according to benefits accruing.

**7. Drains ⟨⟩82(3).** ·

Trial court's finding, reducing benefits assessed against railroad by commission appointed to assess benefit for drainage district, cannot be complained of by railroad.

**8. Appeal and error ⟨⟩850(2).**

Under Rev. St. § 649 (Comp. St. § 1587), only question presented for review in a jury-waived case at law is whether there was any substantial evidence to support finding of court.

**9. Courts ⟨⟩406(1).**

Under Rev. St. § 649 (Comp. St. § 1587), finding of court in jury-waived case at law, bottomed on substantial evidence, is not reviewable in Circuit Court of Appeals.

**10. Courts ⟨⟩366(1)—Circuit Court of Appeals is bound by Missouri Supreme Court ruling that cost of constructing bridge over artificial channel as result of forming drainage district falls on railroad under statute (Rev. St. Mo. 1919, § 4406).**

Circuit Court of Appeals is bound by ruling of Missouri Supreme Court that cost of bridge constructed by railroad, because of artificial channel for use of drainage district, falls on railroad, and not on drainage district, under Rev. St. Mo. 1919, § 4406.

**11. Drains ⟨⟩55—Cost of constructing railroad bridges over artificial channel caused by drainage district need not be compensated for by district (Const. Mo. 1875, art. 12 § 5; Rev. St. Mo. 1919, §§ 4390, 4406).**

Under Const. Mo. 1875, art. 12, § 5, cost of building and maintaining railroad bridge over artificial channel constructed by drainage district need not be compensated for by district, and Rev. St. Mo. 1919, § 4390, providing damages for all property taken or injuriously affected, does not have reference to bridges over ditches created by drainage district, in view of section 4406.

In error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Proceeding to assess damages and benefits in the matter of the organization of South Daviess County Drainage District. The Wabash Railway Company excepted to the report of the commissioners, and from the judgment thereon the Wabash Railway Company brings error. Affirmed.

Homer Hall, of St. Louis, Mo. (N. S. Brown, of St. Louis, Mo., S. J. Jones, of Carrollton, Mo., and Dudley & Brandom, of Gallatin, Mo., on the brief), for plaintiff in error.

Nat G. Cruzen, of Gallatin, Mo., and A. G. Knight, of Trenton, Mo., for defendant in error.

Before LEWIS, Circuit Judge, and FARIS and PHILLIPS, District Judges.·

FARIS, District·Judge. This is a writ of error brought by the Wabash Railway Company to reverse the finding and judgment of the trial court upon certain exceptions filed by the plaintiff in error to the report of the commissioners appointed to assess damages and benefits in the matter of the organization of the South Daviess County drainage district. ·For brevity and convenience the plaintiff in error will hereinafter be referred to as the railway, and defendant in error as the district.

Upon the coming in of a report of the commissioners, assessing benefits of $90,000 against the railway and damages in its favor for some $50 for right of way, appropriated for a lateral ditch which crosses the railway at a point where there has not heretofore been any natural waterway, the railway filed exceptions. After a lengthy hearing before the court, a jury being waived, the benefits assessed against the railway were reduced to some $63,000. The trial court refused to allow to railway its exception to the report of the commissioners, for that they failed to allow damages for the cost of building and maintenance of a bridge over the above-mentioned lateral drainage ditch.

There are some 39 errors alleged. Some of these attack the law as unconstitutional on divers phases, and because violative of various provisions of the federal Constitution. In addition to the 39 errors urged and the several attacks on the constitutionality of the statutes, there are numerous others bottomed on the refusal of the court to declare the law as requested by the railway.

All these alleged errors notwithstanding, three points would casually seem to fully cover about all of the questions raised by the railway. These are: (a) That the court erred in refusing to declare the law to be that the feasibility of the proposed drainage scheme, or plan for reclamation, could be at-. tacked upon these exceptions and after the report of the commissioners has been filed; (b) that the plan is not feasible, but dangerous as to the railway, and the same will be a menace, and not a benefit; that is to say, that, instead of being benefited by the plan for reclamation as adopted, the railway will be damaged; and (c) that damages should have been allowed by the court for the cost and expense of building and maintaining a railroad bridge across the artificial waterway created by the lateral diversion ditch from

Muddy creek to its junction with the main drainage canal. In connection with the discussion of these questions, the constitutional objections urged will be considered.

[1] It may be wise, and an aid to an understanding of the discussion made necessary, to begin with the premise that a drainage district, created under the provisions of the statutes of Missouri, as was this at bar, is a political subdivision of the state, which the state has the power to create under its police powers, and which exercises prescribed statutory functions of government within the territorial limits of the district; that is to say, it is a quasi public corporation, and not a private corporation, in any sense or upon any view. Mound City, etc., Co. v. Miller, 170 Mo. 240, 70 S. W. 721, 60 L. R. A. 190, 94 Am. St. Rep. 727; In re Birmingham Drainage District v. Railroad, 266 Mo. 60, 178 S. W. 893; Morrison v. Morey, 146 Mo. 543, 48 S. W. 629.

The question of the feasibility of the plan for reclamation as mooted by the railway on this record is a limited one, as contradistinguished from a thorough-going one. In other words, it is not contended that as to lands and property within the district, other than that of the railway, benefits will not accrue exceeding in amount the cost of the work proposed. This is made clear by the assignment of error in railway's brief, wherein this contention of lack of feasibility is expressly limited to "the feasibility and legality of the plan for reclamation as it relates to this exceptor and its property." This limitation is further curtailed by the statements in railway's brief that it "does not contend that the assessment of benefits to lands subject to overflow is not legal, or that the property of the exceptor in this district is not subject to overflow and injuriously affected thereby. *It does contend, however, that this project, in so far as it affects the exceptor, is not feasible or legal, and that, instead of being a benefit, it will work irreparable injury to the exceptor's property, for which injury and damage no adequate compensation was allowed or can be made.*"

It will thus be seen that the attack as to the question of feasibility vel non is largely, if not wholly, merged in and comprehended by the second contention; that is to say, there is no attack upon the general feasibility of the plan for reclamation, which is tacitly conceded, but it is urged that the plan, so far from benefiting the railway, will damage it, and that for these damages no adequate compensation has been or can be made.

[2] In the light of this situation it makes no difference whether or not it was error to refuse to declare the law as requested on the point by the railway. For the record discloses that the matter of feasibility, in producing benefits or damages to the property of the railway, was gone into fully by the court; that a cloud of witnesses were offered and heard, pro and con, upon this question. Not only were witnesses heard, but in other declarations of law the precise question was ruled, as will be seen from declarations of law given, and hereinafter set out in the discussion, touching whether as a fact the railway would be helped or hurt by the proposed work. If, then, it was error, and we need not and do not rule the point, it was wholly harmless, because, not only was all of the testimony offered upon the point heard by the court, but, regardless of his refusal to declare the law as requested by the railway, he fully considered and carefully weighed this identical question, as is shown by his memorandum opinion. Not only did he consider it, but by reason of such consideration he deducted some $27,000 from the benefits found and reported by the commissioners against the railway. So, if it was error, and we repeat it is not necessary to decide the question, it is cured by the Act of February 26, 1919, 40 Stat. 1181 (Comp. St. Ann. Supp. 1919, § 1246).

The contention next made by the railway seems to be that the statute, which provides for the assessment of benefits against railroads and their property, is not only invalid, but that it was incorrectly applied by the trial court in making the assessment here against the property of the railway. Generally, and upon particular phases, the statute has been declared constitutional by the Supreme Court of Missouri, as a valid exercise of the police power of the state. Mound City, etc., Co. v. Miller, 170 Mo. 240, 70 S. W. 721, 60 L. R. A. 190, 94 Am. St. Ry. 727; Little River Drainage District v. Railroad, 236 Mo. 94, 139 S. W. 330. But, while objections have been numerously made to the validity of this statute by railroads, which were sought to be assessed and taxed for benefits, and while the questions here raised may well have been included within the judgments rendered (Little River Drainage District v. Railroad, supra; Birmingham Drainage District v. Railroad, supra), yet no case has been found among the Missouri decisions, nor have counsel cited any, which rules the precise point made in the attack here. In substantial effect, however, the case of Birmingham Drainage District v. Railroad, 274 Mo. loc. cit. 152, 202 S. W. 407, covers some phases

of this objection, as we read on the page above-cited, thus:

"The assessment and levy of taxes is a legislative function to be exercised in such manner and by such agencies as the Legislature may designate within the limits of its power. In the assessment and levy of taxes for street improvements it has generally fixed rules resting substantially on the frontage of lots benefited by the improvement, while in this case it has undertaken to secure equality by an assessment of the actual value of the benefits accruing to the property to be subjected to the tax. As we said in the Houck Case: 'In selecting the subjects of this class of taxation, and in the assessment and levy of the taxes, it is not expected that even approximate perfection will be attained. The discretion of the Legislature, subject only to well-defined constitutional restrictions, must be full and untrammelled; otherwise, revenue laws would never pass the region of judicial debate into the region of execution.' The Supreme Court of the United States, in the same case [Houck v. Little River Drainage Dist., 239 U. S.. 265, 36 S. Ct. 61, 60 L. Ed. 266], said: 'The state in its discretion may lay such assessments in proportion to position, frontage, area, market value, or to benefits estimated by commissioners,' and cites numerous authorities. In the Egyptian Levee Case this court, through Judge Napton, said: "In every form of taxation, whether general or local, it is certainly desirable and proper that the burden should be distributed as near as may be in proportion to the benefit derived, and constitutional injunctions and restrictions, where they have been attempted on this subject at all, are designed to promote this end. But where there is an absence of constitutional provisions, it is not in the power of the courts to enforce any fancied scheme of equality seeming to them more just than the one adopted by the Legislature. The latter department of government is wisely intrusted with the entire control of this subject, and, if practical injustice is done, the remedy is in the hands of the people. Equality of taxation may, however, be regarded as one of those Utopian visions, which neither philosopher nor legislator has ever yet realized.'"

[3] In passing, it may be said that the case last above cited holds that appeals and writs of error are limited to the two specific questions set out in the statute, namely: "First, whether just compensation has been allowed for property appropriated; and, second, whether proper damages have been allowed for property prejudicially affected by the improvements." Section 4392, R. S. Mo. of 1919. In many other cases, a similar ruling has been made by the Supreme Court of Missouri. Drainage District v. Railroad, 216 Mo. 709, 116 S. W. 549; Buschling v. Ackley, 270 Mo. 157, 192 S. W. 727. We have not considered the legal question as to whether the railway had or had not the right to appellate review of the matter of benefits accruing to it, or as to whether any will accrue to it. This for the reasons that, in the view we take of the case, no such consideration is necessary, and because of the contention that damages will accrue to the railway from doing the proposed work in the manner contemplated. If the latter contention is true, and no compensation has been allowed, the matter is reviewable here, perforce the language of the above statute.

[4] Regardless of these holdings, and for another reason adverted to hereafter, there are two questions involved in this matter. One is whether the statute, as a matter of law, provides a proper, legal, definite, and valid assessment for a tangible and real benefit; the other is the question of fact as to the proof of the existence of such benefit. The other question seemingly mooted by the railway, to the effect that the subjects of the benefits are different, and are computed or laid against the railway's property in a different way and on a different basis as compared to farm lands and woods land, and indeed other property in the district, has no legal foundation on which to stand. These differences are inherent (Birmingham Drainage District v. Railroad, 274 Mo. 140, 202 S. W. 404) and arise from differences in the nature, use, and value of the property; and they are largely answered by the excerpt quoted from the case last cited, for it is, of course, too clear to require argument or authority that, if the 152 acres of the railway's track and right of way be worth $312,500, and a damage by flood of $10,000 shall annually accrue to it, while the damage accruing annually to a quarter section of farm land worth only $3,500 shall be only $1,000, the bare acreage basis can have no legal application. Obviously, then, uniformity of taxation cannot be and is not required as regards acreage; but the chief regard must, of course, be had as to the value of the property assessed for benefits, the increase of value arising from the proposed improvements, decrease of damages from floods, and decrease of costs of maintenance and repairs by reason of decrease in volume,

frequency, nature, and severity of floods, and decrease in loss of use of the property in time of floods.

[5, 6] The statute attacked seems fairly to cover and embrace all of these items. For it says that "railroad and other property shall be assessed according to the increased physical efficiency and decreased maintenance cost of roadways by reason of the protection to be derived from the proposed works and improvements" (section 4390, R. S. Mo. 1919); that is to say, the benefits accruing from the drainage afforded. Clearly the words "increased physical efficiency" connote increased use, decrease of time, both wholly and partially, out of use, increase of value by reason of increased use, and decrease of upkeep; while the words "decreased maintenance cost" connote decrease of upkeep, and otherwise speak for themselves, and their meaning is both obvious and applicable without exposition or further interpretation. The general rule is that the charges arising from the drainage improvement shall be apportioned, in some just and reasonable manner, according to the benefits accruing. 9 R. C. L. 655. Many states of the Union have wholly similar statutory provisions, which seems to argue that the ingenuity of mankind has not been as yet able to better express the character of the benefits than as set out in the statute in question. We conclude that this point ought to be disallowed, so far as concerns the question of law involved.

[7] Touching the question of fact and the finding of the court in favor of some $63,-000 of benefits against the railway, and against which a strenuous denial of correctness is lodged and urged, it is enough to say that the trial was before the court sitting by stipulation of the parties as the trier of the facts. As to whether the railway would be damaged, or benefited, or damaged and not at all benefited, many witnesses were heard on both sides. It may well be said that in point of number, at least, the preponderance of the evidence was with the district, and so the court found, except as to benefits from a part of the work, wherein he found for the railway, and reduced benefits by some $27,-000. As to the latter finding, the railway cannot complain, and the district is not complaining.

Accurately speaking, no special findings of fact and conclusions of law were asked or made; but the railway asked the court to pass on 36 declarations of law and 5 findings of fact. Of these declarations of law, the court gave 19 and refused 17, and of the findings of fact he gave 2 and refused 3.

Obviously, many of these requested declarations were, and needs must have been, mere duplications, setting out the same proposition in varying verbiage. On the question of whether the railway would be damaged or benefited by the doing of the work proposed by the plan for reclamation, the court gave at the request of the railway 19 declarations of law dealing with this subject in varying phases. Of these, those numbered 10 and 18 may be excerpted as fair types. They read thus:

"The court declares as a matter of law that the burden rests upon the district to prove to the reasonable satisfaction of the court sitting as a trier of the facts that the right of way and railroad roadway of exceptor will be benefited by putting into execution the improvement provided for in the plan of reclamation, and it must prove to the satisfaction of the court that the benefits claimed are reasonably certain to accrue, and are and will be reasonably definite and ascertainable, and that the accrual of such benefits to the exceptor and its property cannot be left to speculation and uncertainty, depending upon the action of the elements, and if the supposed benefits that would accrue to the exceptor, after the work of actual excavation as proposed by the plan of reclamation is completed, are vague, indefinite, and speculative, then the district is not entitled to have assessed against the exceptor and its property any benefits except those which will accrue by reason only of the actual excavation done by the plan of reclamation."

"The court declares that law to be that, if it finds from the evidence that any portion of defendant's right of way, track, or roadbed will be injured or damaged on account of the improvements provided in the plan for reclamation, then the exceptor is entitled to recover in this proceeding the amount of such damages, regardless of whether exceptor is required to build a bridge across the Muddy Creek lateral at its own expense."

[8, 9] Upon the evidence adduced, the court found that the railway would be benefited, and not damaged, and fixed such benefits at the sum of $63,159. In such situation, in a jury-waived case at law, the only question presented for review here is whether there was any substantial evidence to support the finding of the court upon this question. As said, the evidence is ample; in fact, the record discloses that this fact of benefit, and not damage, was shown by the preponderance of the evidence. Even if there were no such preponderance of

evidence upon the point, since the finding of the court here has the same effect as the verdict of a jury, and since the finding is bottomed on substantial evidence, the question of fact is not reviewable. Section 649, R. S. (Comp. St. § 1587); Phoenix Ins. Co. v. Copelin, 9 Wall. 461, 19 L. Ed. 739; Hathaway v. Bank, 134 U. S. 494, 10 S. Ct. 608, 33 L. Ed. 1004; Dooley v. Pease, 180 U. S. 126, 21 S. Ct. 329, 45 L. Ed. 457.

The most troublesome and stressed question is whether the railway ought, by the commissioners, to have been allowed damages for the cost and expenses of constructing and maintaining a bridge where the new channel of Muddy creek shall, as proposed in the plan for reclamation, be cut through the right of way and track of the railway. The facts are few and simple:

Muddy creek is crossed now by the railway by means of a bridge. In order to straighten Muddy creek, a lateral ditch, from a point in its course to the main ditch, is contemplated and provided for by the plan for reclamation. This point, whereat the lateral ditch leaves Muddy creek, is some two miles from the place where a bridge over this creek is now maintained by the railway. So it will be necessary to build and maintain, at considerable cost and expense, another and a new bridge over this proposed lateral ditch, which, as said, will cross the railway's track and right of way by an artificial channel, to be dug at a place where there is not now, nor has ever been, any natural channel or water course.

[10] The railway contends that the damage, by reason of its having to build and maintain this new and additional bridge, will be around $90,000, and that for this it ought to have been awarded damages by the commissioners, or, upon its exceptions, by the court. There is no question of fact raised about the matter, except as to the cost of this bridge, which, in view of our opinion on this question, is immaterial. Because of a construction of the law and Constitution by the lower court on this point, which resulted in denying the railway this element of damage, or any damage (save for about half an acre of right of way), the whole case largely turns. It seems to be conceded that the cost of this bridge will, under the Missouri statute as construed by the Supreme Court of Missouri, fall upon the railway, and not upon the district. Whether so conceded by the parties or not, this is the law, as the Supreme Court of Missouri has repeatedly held, and by this ruling this court is bound. Section 4406, R. S. Mo. of 1919; State ex rel. v.

Chariton Drainage District, 252 Mo. 345, 158 S. W. 633; State ex rel. v. Drainage District, 269 Mo. 444, 190 S. W. 897; State ex rel. v. Little River Drainage District, 271 Mo. 429, 196 S. W. 1115.

[11] The weight of direct authority is apparently with the district. The weight of what, arguendo, may be called indirect authority, to the effect that the cost of building and maintaining this bridge would ordinarily, and absent any consideration of the police power, fall within the abstract definition of a taking and damaging of property, seems to be with the railway. So much the counsel for the district concede; but they contend that it is a damage without a justiciable injury, because they urge that the railway was allowed to construct its track and roadbed in contemplation of and in subordination to the police powers of the state. And so, by the great weight of authority, it is ruled. Lake Shore Co. v. Clough, 242 U. S. 380, 37 S. Ct. 144, 61 L. Ed. 374; Chicago, etc., Ry. v. Drainage Commissioners, 200 U. S. 561, 26 S. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175; Chicago, etc., Ry. Co. v. Minneapolis, 232 U. S. 430, 34 S. Ct. 400, 58 L. Ed. 671; Chicago, etc., Ry. v. Chicago, 166 U. S. 226, 17 S. Ct. 581, 41 L. Ed. 979; Northern Pacific Ry. v. Duluth, 208 U. S. loc. cit. 597, 28 S. Ct. 341, 52 L. Ed. 630; New Orleans Gaslight Co. v. Drainage Commissioners, 197 U. S. 453, 25 S. Ct. 471, 49 L. Ed. 831. It is at least persuasive that the state courts have taken a similar view of the law. Northern, etc., Ry. v. Richland Co., 28 N. D. 172, 148 N. W. 545, L. R. A. 1915A, 129, Ann. Cas. 1916E, 574; Hahn v. Gould, etc., R. R. Co., 113 Ark. 537, 168 S. W. 1064; Chicago, etc., R. R. Co. v. Chicago, 140 Ill. 309, 29 N. E. 1109; Wabash, etc., Ry. Co. v. Jackson, 176 Ind. 487, 95 N. E. 311, 96 N. E. 466; American Tobacco Co. v. Missouri Pac. R. Co., 247 Mo. 374, 157 S. W. 502; Boston, etc., R. R. Co. v. York County Commissioners, 79 Me. 386, 10 A. 113; Gulf, etc., Ry. Co. v. Milam Co., 90 Tex. 355, 38 S. W. 747. The case of American Tobacco Co. v. Missouri Pac. R. Co., supra, is a Missouri case, and is applicable upon the questions touching the legal foundation of the rule and the policy of the state of Missouri, both of which are seen to be in full accord with the basic state policies held in review by the Supreme Court of the United States in the case of Lake Shore Co. v. Clough, supra, and many other cases.

This court has reached a similar conclusion in a case from Iowa. Chicago, etc., Ry.

v. Supervisors, etc., of Appanoose Co., 182 F. 291, 104 C. C. A. 573, 31 L. R. A. (N. S.) 1117. It is contended, however, by the railway, that the Iowa statute expressly provided that no damages should be awarded for building bridges, but that the Missouri statute provides for damages for all property taken or injuriously affected (section 4390, R. S. of Mo. 1919), and that the railway is injuriously affected. That this latter statute does not have reference to the cost and expense of building and maintaining bridges over ditches and drains created by drainage districts is conclusively shown by section 4406, supra, of the Missouri statute and by the cases decided by the Supreme Court of Missouri construing the above section, wherein, as already said, it is in effect held that the railway shall build these bridges, without compensation. State ex rel. v. Chariton Drainage District, 252 Mo. 345, 158 S. W. 633; State ex rel. v. Little River Drainage District, 271 Mo. 429, 196 S. W. 1115.

The very latest pronouncement we have been able to find upon this question by the federal courts is found in the case of Lake Shore, etc., Ry. Co. v. Slough, 242 U. S. loc. cit. 382, 37 S. Ct. 144, 147 (61 L. Ed. 374), where it is said: "In view of the obligations assumed by the respective companies when they accepted their franchises at the hands of the state, it is very clear that the state may exercise its police power in laying out an artificial water course across the rights of way without making compensation to the companies for the inconvenience and expense to which they are thereby subjected, unless, indeed, it be made to appear that the power is being exerted arbitrarily, or wantonly, or for private as distinguished from public benefit, or otherwise in disregard of the fundamental rights of the companies concerned, in either of which cases there would be an abuse rather than an exercise of the power, and the project could not lawfully be carried out against their opposition, with or without compensation."

As the above excerpt foreshadows, the view to be taken is to be bottomed upon either the organic law or upon the settled state policy. Here the above rule is in consonance with both the state Constitution and the state policy; for the Missouri Constitution provides: "The exercise of the police power of the state shall never be abridged, or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals, or the general well-being of the state." Const. Mo. 1875, art. 12, § 5. The decisions of the Supreme Court of Missouri are likewise in full accord upon the matter of the policy of the state, and hold that railroads and other corporations take and exercise their powers and franchises in absolute subservience to the above provisions of the state Constitution, so far as concerns any manifestation of the police power by the state, or by its political subdivisions. American Tobacco Co. v. Missouri Pac. R. Co., supra; Transbarger v. Chicago & Alton Ry. Co., 250 Mo. 46, 156 S. W. 694; State of Missouri v. Pacific Ry. Co., 242 Mo. 339, 147 S. W. 118. We have already said that the Missouri cases settle the proposition that a drainage district, such as that at bar, is a political subdivision of the state, which exercises prescribed functions of government within the territorial limits of the district.

It follows that, since the judgment of the court below was correct, and no errors were committed warranting reversal, it ought, with costs, to be affirmed.